The KANSAS CITY STAR
COMPANY, Respondent,

v.

Katheryn SHIELDS, Appellant.

No. WD 40940.

Missouri Court of Appeals,
Western District.

May 16, 1989.

Philip F. Cardarella, Kansas City, for
appellant.

W.H. Bates, Timothy K. McNamara, Jonathan R. Haden, Kansas City, for respondent.

William L. Webster, Atty. Gen., Deborah
L. Ground, Asst. Atty. Gen., Jefferson
City, for amicus curiae.

Before LOWENSTEIN, P.J., and
NUGENT and FENNER, JJ.

LOWENSTEIN, Presiding Judge.

Facing a crisis involving a $15 million budget deficit and with the date for mandatory budget approval by the Kansas City Council fast approaching, the finance committee of the council met for lunch on April 14, 1988, in the back room of Fedora's Bar & Grill on the Country Club Plaza. Present were three of the four committee members—the chairman, the appellant and one other council member along with the city manager and the city budget officer. No notice of the meeting was given. A proposed budget was discussed, including evaluation of certain city expenditures. The respondent newspaper, the Kansas City Star Company, filed this suit against the three council members on the finance committee for violation of Missouri's "Sunshine" or "Open Meetings" law, which is contained in Sections 610.010—610.030, RSMo Supp.1987. All further references in this opinion will be to this law, which is embodied in Chapter 610 and which covers open meetings and records of public governmental bodies. As discussed in more detail *infra*, and as pertinent to this case, this law requires a city council committee, as a public governmental body, § 610.010(2), at any meeting during which public business is discussed, § 610.010(3), to give notice of the meeting to the media and to the public, § 610.020.1, at least twenty four hours in advance of the meeting, § 610.020.2, and the meeting must be held at a time and place "reasonably convenient to the public," § 610.020.3. The trial court's judgment was adverse to the three council members. Only council member Kathy Shields has appealed.

Many of the following facts, not all of which are designated by quotation marks, are taken from the extensive findings of Judge Hanna. The Finance Committee of the Kansas City, Missouri, City Council was responsible for the budget recommendation of 1988–89 fiscal year which was to be given to the full council. That recommendation was due on or before April 21st, 1988. The committee was made up of the

following people: Bob Lewellen, (chairman), Joanne Collins, Katheryn Shields, and Mark Bryant.

During January, February, March and April of 1988, the finance committee held a series of public hearings on the issue of budget cuts. On March 10, 1988, at a regular session of the city council, the city manager, David Olson, recommended a proposed budget. That recommendation included budget cuts in some city programs and the entire elimination of other programs. That proposal spurred "intense citizen and media interest in the budget process for the 1988–89 fiscal year."

Following a "contentious" city council meeting, Bryant suggested to Lewellen that a luncheon meeting might be in order to discuss the budget in a general away. That luncheon meeting was held in a private dining room at Fedora's Cafe and Bar on the following day, April 14. Those in attendance were the chairman of the finance committee, two of the three committee members, and two key staff personnel. Bryant was unable to attend the meeting.

No notice of the noon luncheon meeting was given or posted. At the meeting, the following budgetary matters were discussed: summer youth enrichment program, police helicopter unit, city probation program, open door school program, finance earnings tax collections, and trash bag dissemination.

Those subjects were covered in a document entitled "Another Budget Alternative," brought to the meeting by Olson and passed to each member of the committee. It listed the various programs and the cost to fund each, for a total expenditure of $6,500,000.00. The document also showed potential revenues of approximately the same amount.

Following the luncheon meeting, and at Lewellen's suggestion, Olson prepared a memorandum setting forth the proposed budget amendments for review by the committee members. That memo was forwarded to the mayor and other members of city council after consultation between the finance committee members and the city manager. It was signed by all the members of the finance committee. It set forth the unanimous agreement of the finance committee to certain amendments to the city manager's budget as outlined in the attachment to the memorandum. That amendment was virtually identical to the document entitled "Another Budget Alternative" which Mr. Olson had presented and which was discussed at the April 14 luncheon at Fedora's. In essence, many budget items previously deleted were reinstated at the Fedora meeting and then by the full council.

Shields is an attorney. Before she served on the city council she worked for the Jackson County Counselor's Office. Her legal duties with the counselor's office required her to comply with the Sunshine Law and to draft notices of public or closed meetings. Shields suggested Fedora's as the site for the luncheon, then she instructed her aide to schedule the luncheon in the private back dining room at Fedora's.

Shields' own testimony disclosed that Bryant suggested to the chairman "that the Finance Committee get together over lunch some day to discuss the budget in a general way." Lewellen thought it "would be a good idea to have Mr. Olson [the city manager] and Mr. Leiker [finance department] attend the luncheon so they could explain some of their reasoning on the budget and explain any options they may have come up with." Lewellen first mentioned the luncheon meeting to Shields some time in the afternoon of April 13th. Shields felt that the luncheon, "seemed like a good way of giving me some additional information." In response to a question about her aide having made the room reservations at Fedora's, Shields answered: "Subsequently, at some point after Bob asked me to go to lunch, *that same afternoon* he also asked me, I think he said his aide wasn't available, would I have my aide set up lunch at Fedora's, so I did; asked her to do that."

Shields, elected to the council in March, 1987, had, along with the other council persons, been the subject of a prior open meetings suit filed by the respondent. The Kansas City Council had been involved in a

closed vote by the members on a change of fire-fighting services at the airport.

On the basis of all the previously mentioned findings, the court, under § 610.027.3 found by a preponderance of the evidence the defendant members of the council had purposely violated the law. It entered an injunction against the chairman, § 610.030, and assessed a civil fine against each defendant. Shields' $100 fine and a share of costs under § 610.027.3 resulted from a conclusion that the luncheon was a public meeting, § 610.010(3), and not an informal gathering for social purposes § 610.010(3), of a public governmental body, § 610.010(2), at which, "any public business is discussed, decided, or public policy formulated[.]," and occurred without notice having been given under § 610.020. The matters discussed were significant, were discussed by a quorum of the committee in violation of both the letter and the spirit of the law, which is to make meetings, votes, actions and deliberations of public governmental bodies open to the public, § 610.011.1. The trial court concluded that the matters addressed at the luncheon were "significant, sensitive and controversial budgetary matters," and were "discussed by a quorum of the Finance Committee," of which Shields was a member.

In this appeal, Shields does not contest the findings of fact, nor the conclusions that this meeting was a "public meeting," at which public business was discussed and therefore required a notice which was not given. The crux of Shields argument on appeal centers around Judge Hanna's conclusion of law which reads:

> Council members Collins and Shields were aware that during the luncheon meeting budgetary matters were being discussed with a quorum of the Finance Committee present. These two council members exposed themselves to the decision-making process when they remained at the luncheon at Fedora's while there was discussion of the budget for the coming year. **By remaining at the meeting they violated the Sunshine Law. They had a responsibility to leave the meeting immediately upon recognition of the foregoing facts. They did not do so.** (Emphasis Added.)

Basically, Shields argues the trial court erred in determining that she had violated the Sunshine Law by failing to leave a luncheon "meeting," when the law does not impose such a "duty to leave." In the alternative, she claims that if the trial court correctly interpreted the Sunshine Law and specifically the part of that law concerning civil fines, then such an interpretation is unreasonably vague as it relates to her claim.

■ Shields' contention that the Sunshine Law is vague, raises the question of this court's jurisdiction. Under Mo. Const. Art. V, § 3, the state supreme court has exclusive jurisdiction in all cases involving the validity of a statute. If any point on appeal involves such a question, the case goes to our supreme court. *State ex rel. Union Electric Co. v. Public Service Commission,* 687 S.W.2d 162 (Mo. banc 1985); *State v. Charity,* 637 S.W.2d 319, 321 (Mo. App.1982).

Shields has resisted the respondent's motion to have the case transferred on jurisdictional grounds. The mere assertion, however, of statutory invalidity does not deprive this court of appellate jurisdiction. "In order to deprive this court of appellate jurisdiction the constitutional question must be real and substantial and not merely colorable." *Forbis v. Associated Wholesale Grocers, Inc.,* 513 S.W.2d 760, 767 (Mo.App.1974).

A claim of violation of a constitutional guaranty may be said to be substantial when, upon preliminary inquiry, the contention discloses a contested matter of right, involving some fair doubt and reasonable room for controversy; but, if such preliminary inquiry discloses that the contention is so obviously unsubstantial and insufficient, either in fact or in law, as to be plainly without merit and a mere pretense, the claim may be deemed to be merely colorable.

*State v. Egan,* 272 S.W.2d 719, 725 (Mo. App.1954). Shields' attack on the Missouri Sunshine Law's punitive provisions is at

best merely colorable. By no stretch of the imagination can it be called substantial. Therefore, this court will hear this appeal.

■ One other matter must also be addressed. The Sunshine Law declares it is the public policy of this state to make actions of public governmental bodies open, and to achieve that end the law must be liberally construed, whereas exceptions to it are to be strictly construed. Section 610.011.1. Shields insists that the portion of the Sunshine Law which imposes a civil fine is punitive in nature and must be strictly construed. She is correct on that point. Section 610.027 covers violation of the Sunshine Law. Section 610.027.3, *supra*, allows the imposition of a civil fine on a member of a public governmental body where the court has by a preponderance of the evidence found a purposeful violation.

A statute, which is penal in nature, must be strictly construed. *BCI Corporation v. Charlebois Construction Co.,* 673 S.W.2d 774, 780 (Mo. banc 1984). A statute remedial in nature, to effectuate a specific purpose, such as providing for clean drinking water is remedial in nature. *Scheble v. Missouri Clean Water Commission,* 734 S.W.2d 541, 556 (Mo.App.1987). That part of the statute that imposes the fine is penal. *See* Sutherland, Vol. 3, Statutory Construction, § 59.01, at 1 (4th ed. 1986), "Where a statute is both remedial and penal, remedial in one part while penal in another, it should be considered a remedial statute when enforcement of the remedy is sought and penal when enforcement of the penalty is sought." *City of St. Louis v. Carpenter,* 341 S.W.2d 786, 788 (Mo.1961). Where a fine for violation of a statute is paid into the registry of the court, such as in the case at bar, the fine is to be considered both as a punishment to the wrongdoer and a deterrent to others. *State on Inf. of Taylor v. American Insurance Co.,* 355 Mo. 1053, 200 S.W.2d 1, 53 (1946). Similarly, where double or treble damages are allowed by an individual or by a public prosecution for milk sales or for vexatious delays have been declared to be penal. *Collier v. Roth,* 468 S.W.2d 57, 60 (Mo.App. 1971).

Section 610.027.3 is penal because it imposes a fine. The other portions of the statute (especially § 610.027.4 for voiding an improper action of a public governmental body, or § 610.030 which allows injunctive relief) are to be liberally construed. This holding, however, does not aid the appellant Shields. The evidence is overwhelming that she purposefully violated the Sunshine Law.

Initially, the Sunshine Law (which was adopted in 1973) had no teeth. That was noted by Judge Pritchard of this court in *Hawkins v. City of Fayette,* 604 S.W.2d 716 (Mo.App.1980). In that case, a citizen and taxpayer of Fayette, Missouri filed a petition for declaratory judgment asking that an ordinance of the city increasing the salary of its mayor be declared void. A special meeting of the Board of Alderman had taken place to discuss the increase in pay for the mayor. The court declared that the meeting was held in violation of the Sunshine Law. The opinion reads:

The lack of public notice of a special meeting would undoubtedly deprive the public of an opportunity to seek injunctive relief against holding such a meeting without proper notice. Yet, injunctive relief is the only remedy which has been provided by the General Assembly to implement the Sunshine Law. Despite the persuasive arguments of some of the cases cited ... for this court to declare the ordinances raising Mayor Ayres' salary and increasing his duties invalid because of lack of public notice would amount to judicial legislation, which, because of important public considerations, this court ought not do ...

*Id.* at 725.

Later, the legislature added to § 610.027 the remedies of civil fines and the voiding of legislation. These remedies were added to beef up and to deter violation of the already stated public policy of the law, as spoken loudly and clearly in the General Assembly, to open the business of government to the people. *Cohen v. Poelker,* 520 S.W.2d 50, 52–53 (Mo. banc 1975).

The judicial interpretation of this law remained unchanged in *MacLachlan v.*

*McNary,* 684 S.W.2d 534 (Mo.App.1984), where the opinion states at page 537:

> The courts of this state have been called upon on frequent occasions to interpret the legislative intent underlying Chapter 610. This law reflects Missouri's commitment to openness in government. It is beyond doubt that the Statute is to be construed liberally in favor of open government. It is the public policy of this State that public commissions exist to aid in the conduct of the people's business. It is the intent of Chapter 610 that their actions be taken openly and that their deliberations be conducted openly.

Strict construction of the statutory penalty provision for a fine does not require the court to ignore either common sense or the evident statutory purpose. *State v. Hobokin,* 768 S.W.2d 76, 77 (Mo. banc 1989).

The long and short of this case shows a clear and almost classic affront to the policy of making the workings of government open to its citizens. Certain "pet projects" of some of those on the council were ultimately saved while other expenditures were scrapped, all after a meeting of the finance committee held in the back room of a bar and grill. All of this discussion of public business and the choice of spending limited dollars was done without opportunity of the taxpayers to see or hear the proceedings. *MacLachlan, supra,* at 538. The person who got the room was the first to arrive. There can be and is no question on appeal that the appellant was aware no notice of the meeting was ever given. Her appeal simply boils down to a complaint that the judge added an illegal requirement on her—a duty to leave. Her implication is that the law still has no teeth and the trial court attempted judicially to insert some vitality to the legislation. Her argument misses the mark. But, the statutory imposition of a civil fine levied on persons violating the law is the specific way the legislature has sought to enforce the Sunshine Law and its policy. When she attended this committee meeting at Fedora's and public business and public policy were discussed, without public scrutiny, Shields violated the law, and the "game was over." Shields suggested the place, knew what was to be discussed, and could not help but know the noon meeting of the 14th that she implemented on the afternoon of the 13th lacked the required 24 hour notice, or any notice for that matter. The Sunshine Law is couched in terms of telling what is forbidden, and once the outlined act has been done, the violation has occurred, so the gratuitous language about Shields having a duty to leave does not detract from an already purposeful violation by her of Chapter 610. This was a clear violation of the law. A civil fine was in order because Shields took part in a secret meeting held in the back room of restaurant and bar, where there was no notice, no visitors, and substantial public business was discussed.

The Sunshine Law is designed to promote open meetings, § 610.011.1, *supra,* even when tempered here by a strict construction the facts here point to a result congruent with that of the trial court.

The judgment is affirmed.