Zel M. Fischer, Judge,
dissenting.
I respectfully dissent, In defining “knowingly” for purposes of § 610.027.3,[1] which this Court has not previously been required to do, the principal opinion relies on unpersuasive dicta and ignores this Court’s basic rules of statutory construction.[2] . Because the General Assembly did not define “knowingly,” this Court should rely on its rules of statutory construction, define the term using its usual’ and ordinary' meaning as derived from the dictionary, and remand the case to the circuit court for further consideration of whether it misapplied the law to the facts as found.
I, History of Sunshine Law Remedies
When the Sunshine Law was adopted in 1973, it had no “teeth.” Kansas City Star Co. v. Shields, 771 S.W.2d 101, 104 (Mo.App.1989). This led the General Assembly to adopt' various remedies to ensure meaningful enforcement of the law. Id. One of the “teeth” added in 1982 was a provision allowing the circuit court to order the defendant to pay the plaintiffs attorney’s fees in cases in which the - defendant’s actions were sufficiently -culpable, i.e., when the defendant “purposely” violated the Sunshine Law. § 610.027.3, RSMo Supp.1983. In deciding- where to draw the line between Sunshine Law violations for which an award of attorney’s fees may (and may not) be made, the General Assembly had to balance two competing realities. First, the costs of bringing a Sunshine Law claim (including, most notably, attorney’s fees) are so high that they present a considerable barrier to enforcement of the Sunshine Law by members of the public even when they have a meritorious claim. Second, even when a public governmental body acts with great diligence and utmost good faith, Sunshine Law violations still may occur, when the governmental body makes a mistake of fact (e.g., it does not know that a particular record has been requested or is not being produced) or a mistake of law (e.g., it fails to understand that the *203 Sunshine Law requires disclosure in the circumstances at hand). ■ The General Assembly struck that balance-in 1982 by providing that the circuit court may award attorney’s fees only when the defendant “purposely” violates the Sunshine Law. §■ 610.027.3, RSMo Supp.1983,
Because the General Assembly did not define “purposely” in § 610.027.3, this Court addressed the meaning of that term in Spradlin v. City of Fulton, 982 S.W.2d 255 (Mo. banc 1998), and held that a defendant “purposely” violates the Sunshine Law only when the defendant has a “conscious design, intent, or plan to violate the law and [acts] .,. with awareness of the probable consequences.” Id. at 262 (internal quotation marks omitted). This Court acknowledged that this definition makes an award of attorney’s fees possible only in the rarest of cases and, therefore, that § 610.027.3 would make little practical difference either in deterring Sunshine Law violations or incentivizing members of the public to pursue meritorious Sunshine Law claims.
This may be so and the legislature might well consider the issue. However, courts must give effect to the language as written. The plain language of the statute only authorizes assessment of attorney’s fees against an individual upon a demonstration of a ‘purposeful’ violation of the law. There is no room for construction even when a court may prefer a policy different from that enunciated by the legislature.
Spradlin, 982 S.W.2d at 261 (internal citations and quotations omitted) (emphasis added).
In- 2004, the General Assembly took the Court at its word and amended § 610.027 to - expand the category of cases in which attorney’s fees may be awarded. The 2004 amendments keep the original category of cases in which the defendant “purposely” violates the' Sunshine Law but make an award of attorney’s fees in such cases mandatory. Section 610.027.4. In addition, the 2004 amendments allow (but do not require) the circuit court to award attorney’s fees when the defendant “knowingly” violates' -the Sunshine Law. Section 610.027.3.
Every purposeful violation also is a knowing violation, but the opposite is not true. . The two terms are not synonymous. If they Were, the General Assembly’s decision to add this new category of cases would be meaningless. See Cox v. Dir. of Revenue, 98 S.W.3d 548, 550 (Mo. banc 2003) (when the General Assembly amends ¿'statute, this Court must presume it intended to effect a change-to the prior law); see also State v. Liberty, 370 S.W.3d 537, 552 (Mo. banc 2012) (quoting Kilbane v. Dir. of Dep't. of Revenue, 544 S.W.2d 9, 11 (Mo. banc 1976)) (“The legislature is not presumed to have intended a useless act.”). Instead, it is clear the General Assembly intended thé 2004 amendments to expánd the category of cases in which attorney’s fees may be awarded, while leaving to the discretion of the circuit court the decision of whether to award such fees in all but the most culpable cases (i.e., where the defendant “purposely” violates the Sunshine Law).
II. The Proper Definition of “Know* ingly”
The principal opinion takes its definition, of “knowingly” from Strake v. Robinwood West Cmty. Improvement Dist., 473 S.W.3d 642, 645 (Mo. banc 2015) (“A knowing violation requires proof that the public governmental body had ‘actual knowledge that [its] conduct violated a statutory provision.’-,”) (alteration in original). But the holding of .Strake was that the defendant “purposely violated” the Sunshine Law for purposes of a mandatory attorney’s fee award pursuant to § 610.027.4. If a viola *204 tion is committed purposely, it necessarily is committed “knowingly.” Because it was not necessary for this. Court to define “knowingly” in Strake to reach its holding, the definition given for “knowingly” Was merely dicta. See, e.g., Rentschler v. Nixon, 311 S.W.3d 783, 787 n. 2 (Mo. banc 2010).
Not only was the definition in Strake dicta, but in my view, it also was dicta with a wholly unpersuasive origin. The principal opinion states this Court “reaffirmed” the definition of “knowingly” in Strake. But this Court had never before defined “knowingly” for purposes of § 610.027.3— dicta or otherwise — and Strake simply lifted, without further explanation, the court of appeals’ definition of “knowingly” from White v. City of Ladue, 422 S.W.3d 439, 452 (Mo.App.2013). In White, the court of appeals stated, “A federal district court interpreting Missouri law has held that to establish .a ‘knowing’ violation of the Sunshine Law, a.plaintiff must show that the defendant had ‘actual knowledge that the conduct violated a statutory provision.’ ” Id. at 452 (quoting Wright v. City of Salisbury, Mo., No. 2:07CV00056, 2010 WL 2947709, at *5 (E.D. Mo. July 22, 2010)). The unpublished federal district court decision from which White took its definition of “knowingly,” in turn, stated:
The parties have not cited to the Court any cases that define “knowingly” in the context of the Sunshine Law. This Court believes, however, that the Missouri Supreme Court would hold that the drafters did not intend to impose the specter of civil penalties and attorney’s fees on a strict liability basis. Jn the recent case of R.L. Polk, 309 S.W.3d at 881, the Missouri Court of Appeals found that the state Department of Revenue had violated the Sunshine Law by charging an across-the board “per record” fee for public records provided electronically over the internet. The Appellate Court, however, specifically recognizing the various mental states and corresponding penalty provisions in the Sunshine Law, held that this violation was not a “purposeful or knowing violation.” Id. at 887. The Appellate Court based this holding on the definition for “purposely” in Spradlin, 982 S.W.2d at 262. Id. Indeed, the trial court in R.L. Polk had held that “the knowing or purposeful violation described in subsections 3 and 4 of Section 610.027 requires a purpose to violate a statutory provision or actual knowledge that the conduct violated a statutory provision.” See Br. of Appellants-Cross-resp’ts Dep’t of Revenue & Dir. of Revenue, Case No. WD70973, 2010 WL 718551, at *11 (Mo.Ct.App.) (emphasis added).
Id. at *5 (emphasis added, footnote omitted).
So, the principal opinion defines “knowingly” using language originating from an unpublished federal district court decision that notes — explicitly—that it was applying the definition of “purposely” set forth in Spradlin. In so doing, the intended effect of the 2004 amendments are frustrated by rendering the sought-after expansion of cases in which attorney’s fees may be awarded wholly illusory. That is, the principal opinion has given “knowingly” a definition that is the functional equivalent of “purposely.” Such a construction is to be avoided. See Liberty, 370 S.W.3d at 552; Cox, 98 S.W.3d at 550; Kilbane, 544 S.W.2d at 11. The principal opinion argues its definition of “knowingly” is not functionally equivalent to' “purposely” because proving the defendant had a purpose to violate the Sunshine Law is a greater burden than proving the defendant had actual knowledge that its conduct violated the Sunshine Law. But there is no practical distinction. Of course, to prove the *205 defendant “purposely” violated the Sunshine Law pursuant to Spradlin’s definition, the plaintiff must prove the defendant had actual knowledge that its conduct violated the Sunshine Law. And if a plaintiff proves the defendant violated the Sunshine Law and proves the defendant had actual knowledge that its conduct violated the Sunshine Law, the reasonable inference is that the defendant acted with a “conscious design, intent, or plan” to violate the Sunshine Law — otherwise the defendant would not have acted as it did. See Strake, 473 S.W.3d at 646. A defendant’s argument that it knew its conduct violated, .the Sunshine Law and acted regardless, but it did not actually have a “conscious, design, intent, or plan” to violate the Sunshine Law when it acted, would be untenable in reality. The burden is the same.
Furthermore, to properly define a word in a statute that has been left undefined by the General Assembly, this Court does not look to an unreported federal district ' court’s decision or even a Missouri court of appeals’ decision. “This Court’s primary rule of statutory interpretation is-to give effect to legislative intent as reflected in the plain language of the statute at issue.” Parktown Imports, Inc. v. Audi of Am., Inc., 278 S.W.3d 670, 672 (Mo. banc 2009). When the General Assembly chooses to define a word, that definition is to be followed, but when it leaves a word undefined, “[i]t is a basic rule of statutory construction that words should be given their [usual] and ordinary meaning whenever possible.” State ex rel. Jackson v. Dolan, 398 S.W.3d 472, 479 (Mo. banc 2013) (internal quotations omitted). The usual and ordinary meaning of a word is derived from a regular dictionary. E.g., Miss Dianna’s Sch. of Dance, Inc. v. Dir. of Revenue, 478 S.W.3d 406, 408 (Mo. banc 2016). Therefore, in defining “knowingly” for purposes of § 610.027.3, this Court must simply turn to the dictionary.
In Spradlin, this Court mistakenly, in my view, relied on Black’s Law Dictionary for the definition of “purposely.” Id. I would not have referred to Black’s Law Dictionary because if the General Assembly desired a particular legal definition, it could have provided one. The ordinary and usual meaning of a word will be found in a regular, non-legal dictionary, and the definition found in such will not always be compatible with-the definition found in a legal dictionary. Nevertheless, in the 2004 amendments to § 610.027, the General Assembly declined to change the definition of “purposefully” that this Court had declared in Spradlin. As a result, the definition of “purposely” in the mandatory attorney’s fee award provision in § 610.027.4 remains the definition this Court declared, even though, in my view, it should not have relied on Black’s Law Dictionary. See Templemire v. W & M Welding, Inc., 433 S.W.3d 371, 388 (Mo. banc 2014) (Fischer, J., dissenting) (“Cases interpreting statutes carry the legislature’s approval when it does not take action to overrule them, and the legislature ratifies them by allowing them to stand while enacting particular legislation on the same subject matter.”). The dictionary definition of “knowingly” is “in a knowing manner.” Webstee’s Third New INTERNATIONAL DICTIONARY • 1252 (1993). The dictionary definition of “knowing” is “having or reflecting knowledge, information, or insight.” Id. Applying the ordinary and usual meaning of “knowingly” to § 610.027.3 results in:
Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body has[, when having knowledge, information, or insight,] violated sections ■ 610.010 to 610.026, the public governmental body or the member shall be subject to a civil penalty in an amount up to one thousand dollars....
*206 Therefore, a defendant “knowingly” violates the Sunshine Law when the defendant simply has “knowledge, information, or insight.” The relevant “knowledge, information, or insight” in this context pertains to whether a particular record was requested and whether the record was thereafter disclosed. The defendant “knowingly” violates the Sunshine Law when it knows a record was requested and it failed to disclose the record— i.e., the defendant knows of the facts of its conduct.[3] It is not necessary that the defendant knows of the law governing its conduct. To require specific knowledge of the law requires a departure from the plain language of the statute and, again, renders “knowingly” .the. functional equivalent of “purposely.” Moreover, the overarching purpose of the Sunshine Law is to ensure open government and transparency. If ignorance of the law is no excuse for the average citizen, then surely a contrived misconstruction of the Sunshine Law is no excuse for a government, body charged with performing its mandates.-
III. The Case Should Be Remanded for Consideration Applying the Proper Definitions of “Knowingly” and “Purposely”
In ordering'the City to disclose the internal affairs' report, the circuit court found:
The Defendant City of Arnold’s contention that the Internal Affairs report is in whole, or in part, a personnel record is wholly inaccurate. The Court finds that the Internal Affairs report is an “Investigative report” as defined in § 610,100.1(5) and that it is “Inactive” as defined in § 610.100.1(3).
The Internal Affairs' investigation was ordered By Police Chief Shockey upon the formal complaint by the Plaintiff herein. The complaint alleged criminal violations by City employee Linda Darnell, while working as a Police Department dispatcher. Thereafter, the investigation became inactive when Linda Darnell resigned her position, and no further action was taken. Therefore, at this point in time Plaintiffs are entitled to disclosure of said report.
The circuit court further found the City’s failure to disclose the internal affairs report was “substantially unjustified under all relevant circumstances.”
As explained above, a defendant “purposely” violates the Sunshine Law when it acts with the plan or purpose of committing such a violation. On the other hand, a defendant “knowingly” violates the Sunshine Law when the defendant knows that a particular record is requested and knows that it has not disclosed it — regardless of whether the defendant knows (or even reasonably should have known) whether the failure to produce the record constitutes a violation of the Sunshine Law.
In my view, this case should be reversed and remanded based on misapplication- of the law to the facts.[4] Using these correct definitions, there was a basis in the evidence to conclude the City acted purposely or knowingly. While I would defer to the circuit court’s findings of fact, I would not *207 affirm its conclusions of law that did not have the benefit of this Court’s decision in Stmke or the proper definition of “knowing.”
The long and short of the City’s argument is that it did not know that its -failure to disclose the inactive investigation report was a violation of the Sunshine Law because one provision of the Sunshine Law (i.e., § 610.021(3)) seemed to permit closure while another provision of the Sunshine Law (i.e., § 610.100.2) required disclosure. Properly defined, this argument is irrelevant to the question of whether the City “knowingly” violated the Sunshine Law because it knew that the report had been requested and it knew that the report was not being disclosed.
Moreover, the City’s “reasonable mistake of the law” defense does not preclude a finding that the City “purposely” violated the Sunshine Law because — long before the City’s conduct in this case — this Court unambiguously held that the failure to disclose an investigative report pursuant to § 610.100.2 violates the Sunshine Law. See Guyer v. City of Kirkwood, 38 S.W.3d 412, 414 (Mo. banc 2001) (expressly rejecting the argument that § 610.021(3) may be used to justify closure where § 610.100.2 requires disclosure).[5]. Having had the benefit of Guyer for more than a decade, it simply was not reasonable for the City to believe that its conduct did not violate the Sunshine Law. .Therefore, the circuit court could conclude that the City acted with a conscious plan or design to commit such a violation.
Stroke teaches that, when a defendant makes a conscious decision to violate the Sunshine Law to avoid violating a lesser obligation, it is inescapable that the- defendant “purposely” violates the Sunshine Law. Strake, 473 S.W.3d at 646 (defendant subordinated its. Sunshine Law obligation to -a lesser obligation, i.e;, a contractual duty of confidentiality). Herd, there was evidence from which the circuit court could find that the City was pursuing one (or both) of two such lesser obligations: (a) a local ordinance prohibiting disclosure or (b) the desire to protect itself from potential civil claims based on the actions of its employees. If the circuit court finds the City, subordinated its obligation pursuant to § 610.100.2 (rendered clear and certain by Guyer) to one or both of these lesser obligations, then — following Stroke — it should conclued the City “purposely” violated the Sunshine Law.
This case presents the rare case in which it appéars the circuit court misapplied the law to the facts. For that reason, in my view, this case should be remanded to the circuit court to apply its factual findings to the proper definition of “knowingly,” defined herein,.and “purposely,” as defined in Stroke, which had not been decided at the time of the circuit court’s decision in this case.
Paul C. Wilson, Judge, dissenting.
When the Sunshine Law was adopted in 1973, it had no “teeth.” Kansas City Star Co. v. Shields, 771 S.W.2d 101, 104 (Mo.App.1989). This led the legislature to adopt various remedies to ensure meaningful enforcement, of the law. Id. One of the. “teeth” added in 1982 was a provision al *208 lowing the trial court to order the defendant to pay the plaintiffs attorney’s fees in cases in which the defendant’s actions were sufficiently culpable, i.e., when the defendant “purposely” violated the Sunshine Law. § 610.027.3, RSMo Supp.1983.
In Spradlin v. City of Fulton, 982 S.W.2d 255 (Mo. banc 1998), however, this Court defined “purposely” so narrowly that it rendered the 1982 version of section 610.027.3 ineffective both as a threat to motivate public governmental bodies to obey the Sunshine Law and as an inducement to the public to bring meritorious Sunshine Law claims. In 2004, therefore, the General Assembly amended section 610.027 to make an award of attorney’s fees mandatory when a defendant “purposely” violates the Sunshine Law (as defined in Spradlin), but merely permissible in a much broader category of cases, i.e., those in which the defendant “knowingly” violates the Sunshine Law.
Now, however, the majority opinion frustrates the intent of the 2004 amendments to expand the cases in which attorney’s fees may be ordered by defining “knowingly” so that it is functionally — if not precisely — the same as the definition of “purposely” provided in Spradlin. Accordingly, I respectfully dissent.
I. Sunshine Law Remedies Prior to 2004
At the outset, it is worth noting that — at least for certain remedies — the General Assembly provides strict liability for Sunshine Law violations. This means that a plaintiff is entitled to declaratory and injunctive relief any time a Sunshine Law violation is shown, regardless of whether the defendant’s conduct was accidental or knowing and regardless of whether the defendant knew (or even should have known) that its conduct would constitute a violation of the Sunshine Law. § 610.027.1, RSMo Noncum. Supp.2014 (“Any aggrieved person ... may seek judicial enforcement of the requirements of sections 610.010 to 610.026.”); § 610.030 (“The circuit courts ... shall have jurisdiction to issue injunctions to enforce the provisions of sections 610.010 to 610.115.”).[1]
But, realizing that the availability of declaratory and injunctive remedies may not be a sufficient deterrent to stop Sunshine Law violations or a sufficient incentive to motivate members of the public to bring meritorious Sunshine Law claims, the General Assembly in 1982 authorized a trial court to order a Sunshine Law defendant to pay the plaintiffs attorney’s fees in some — but not all — cases. In deciding where to draw the line between Sunshine Law violations for which an award of attorney’s fees may (and may not) be made, the General Assembly had to balance two competing realities. First, the costs of bringing a Sunshine Law claim (including, most notably, attorney’s fees) are so high that they present a considerable barrier to enforcement of the Sunshine Law by members of the public, even when they have a meritorious claim. Second, even when a public governmental body acts with great diligence and utmost good faith, Sunshine Law violations still may occur when the body makes a mistake of fact (e.g., it does not know that a particular record has been requested or is not being produced) or a mistake of law (e.g., it fails to understand that the Sunshine Law requires disclosure in the circumstances at hand). The General Assembly struck that balance in 1982 by providing that a trial court may award attorney’s fees only where the defendant *209 “purposely” violates the Sunshine Law. § 610.027.3, RSMo Supp.1983.
Because the General Assembly did not define “purposely” in section 610.027.3, this Court addressed the meaning of that term in Spradlin and held that a defendant “purposely violates” the Sunshine Law only when it has a “conscious design, intent, or plan to violate the law and [acts] ... with awareness of the probable consequences.” Id. at 262 (internal quotation marks omitted). The Court acknowledged that this definition makes an award of attorney’s fees possible only in the rarest of eases and, therefore, that section 610.027.3 would make little practical difference either in deterring Sunshine Law violations or ineentivizing members of the public to pursue meritorious Sunshine Law claims.
This may be so and the legislature might well consider the issue. However, “courts must give effect to the language as written.” Kearney Special Road Dist. v. County of Clay, 863 S.W.2d 841, 842 (Mo. banc 1993). The plain language of the statute only authorizes assessment of attorney’s fees against an individual upon a demonstration of a “purposeful” violation of the law. “There is no room for construction even when a court may prefer a policy different from that enunciated by the legislature.” Id.; see also Bethel v. Sunlight Janitor Service, 551 S.W.2d 616, 620 (Mo. banc 1977) (issues of public policy must be addressed to the General Assembly).
Spradlin, 982 S.W.2d at 261 (emphasis added).
II. Sunshine Law Remedies After 2004
In 2004, the General Assembly took the Court at its word and amended section 610,027 to expand the category of cases in which attorney’s fees may be awarded. The 2004 amendments keep the original category of cases in which the defendant “purposely” violates the Sunshine Law but make an award of attorney’s fees in such cases mandatory. § 610.027.4, RSMo Non-cum. Supp.2014. In addition, the 2004 amendments allow (but do not require) the trial court to award attorney’s fees where the defendant “knowingly” violates the Sunshine Law. § 610.027.3, RSMo Non-cum. Supp.2014.
Every purposeful violation also is a knowing violation, but the opposite is not true. The two terms are not synonymous. If they were, the General Assembly’s decision to add this new category of cases would be meaningless. See Cox v. Dir. of Revenue, 98 S.W.3d 548, 550 (Mo. banc 2003) (when the General Assembly amends a statute, this Court must presume it intended to effect a change to the prior law). See also State v. Liberty, 370 S.W.3d 537, 552 (Mo. banc 2012) (quoting Kilbane v. Dir. of Dept. of Revenue, 544 S.W.2d 9, 11 (Mo. banc 1976)) (“The legislature is not presumed to have intended a useless act.”). Instead, it is clear that the General Assembly intended the 2004 amendments to expand the category of cases in which attorney’s fees may be awarded, while leaving to the discretion of the trial court the decision of whether to award such fees in all but the most culpable cases (i.e., when the defendant “purposely violates” the Sunshine Law). This intention is frustrated when “knowingly” is given a definition that is the functional equivalent of “purposely.”
The majority opinion takes its definition of “knowingly” from Strake v. Robinwood West Community Improvement District, 473 S.W.3d 642, 645 (Mo. banc 2015) (“A knowing violation requires proof that the public governmental body had 'actual knowledge that [its] conduct violated a statutory provision.’ ”) (alteration' in origi *210 nal). But this definition was dicta in Stroke because the holding of the Court was that the defendant “purposely violated” the Sunshine Law for purposes of a mandatory attorney’s fee award under section 610.027.4. If a violation is committed purposely, it. necessarily is committed “knowingly.”
Strake took its definition from White v. City of Ladue, 422 S.W.3d 439, 452 (Mo.App.2013). White states: “A federal district court interpreting Missouri law has held that to establish a ‘knowing’ violation of the Sunshine Law, a plaintiff must show that the defendant had ‘actual knowledge that the conduct violated a statutory provision.’ ” White, 422 S.W.3d at 452 (quoting Wright v. City of Salisbury, Mo., No. 2:07CV00056, 2010 WL 2947709, at *5 (E.D.Mo. July 22, 2010)). The , unpublished federal district court decision from which White took its definition of “knowingly,” in turn, states:
The parties have not cited to the Court any cases that define “knowingly” in the . context, of the Sunshine Law! This Court believes that the Missouri Supreme Court would hold that the drafters did not intend to impose the specter of civil penalties and attorney’s fees on a strict liability basis. In the recent case of R.L. Polk, 309 S.W.3d at 881, the Missouri Court of Appeals found that the state Department of Revenue had violated the Sunshine Law by charging an across-the board “per record” fee for public records provided electronically over the 'internet. The Appellate Court, however, specifically recognizing the various mental states and corresponding penalty provisions in the Sunshine Law, held that this violation was . not a “purposeful or knowing violation.” Id. at 887. The Appellate Court based this holding on the definition for “purposely” in Spradlin, 982 S.W.2d at 262. Id. Indeed, the trial court in R.L. Polk had held that “the knowing or purposeful violation described in subsections 3 and 4 of Section 610.027 requires a purpose to violate a statutory provision or actual knowledge that the conduct violated a statutory provision.” See Br. of Appellants-Cross-resp’ts Dep’t of Revenue & Dir. of Revenue, Case No. WD70973,. 2010 WL 7128551, at *11 (Mo.Ct.App.) (emphasis added).
Id. at *5 (emphasis added, footnote omitted).
So, the, majority opinion defines “knowingly” using language originally taken from an unpublished federal district court decision that notes — explicitly—that it was applying the definition of “purposely” set forth in Spradlin. In so doing, the intended effect of the 2004 amendments are frustrated by rendering the sought-after expansion of cases in which attorney’s fees may be awarded wholly illusory. Not only is such a construction to be avoided, see Liberty, 370 S.W.3d at 552; Cox, 98 S.W.3d at 550; Kilbane, 544 S.W.2d at 11, it is incorrect.
In the 2004 amendments to section 610.027, the General Assembly kept the classification of cases in which- the defendant “purposely violates” the - Sunshine Law without changing the definition that Spradlin had given the term “purposely.” As a result, today, the definition of “purposely” in the mandatory attorney’s fee award provision in section 610.027.4 applies only when the public governmental body exhibits a “conscious ;design, intent, or plan” to violate the Sunshine Law and does so “with awareness of the probable consequences.” Spradlin, 982 S.W.2d at 262.
To give the 2004 amendments their intended effect of expanding the category of cases in which attorney’s fees may be *211 awarded, this Court should define “knowingly’ as used in section 610.027.3 broader than — not the same as — the definition of “purposely” as given in Spradlin. Such a definition is ready to hand:
A person “acts knowingly,” or with knowledge,
(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or
(2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.
§ 562.016.3, RSMo 2000. This definition of “knowingly” is to be distinguished from the definition of “purposely” in the same section: .
A person “acts purposely,” or with purpose, with respect to his conduct-or to a result-thereof when it is his conscious objeet to engage in that conduct or to cause that result. •
§ 562.016.2, RSMo 2000.[2]
It is understandable why the General Assembly would look to definitions from the criminal law to draw a-distinction in section 610,027. In Spradlin, this Court suggested that the provision of section 610.027 allowing (but pot requiring) the trial court to award attorney’s fees was a “penal” provision. . But there is nothing unique about the definitions of “purposely” and “knowingly” under Missouri criminal law. The meaning of these terms is the same in any context.
knowingly adv. In such a manner that the actor engaged in prohibited conduct with the knowledge that the social harm ■ that the law was designed to, prevent was practically certain to result; deliberately. ... A person who acts pur-posel/y wants to cause the social harm, while a person who acts knowingly understands that- the .social harm will almost certainly be a consequence of the action, but acts with other motives and does not care whether the social harm occurs. See culpability; mens rea. Cf. purposely.
Black’s Law Dictionary 1003 (10th ed.2014).
Still, caution must be used lest an incorrect application of the definition of “knowingly” in section 562.016.3 lead to the same mistake made by Strake, i.e., that a .defendant cannot “knowingly” violate the Sunshine Law unless there is “proof that the public, governmental body had ‘actual knowledge that [its] conduct violated a statutory provision.’ ” Strake, 473 S.W.3d at 645 (emphasis added). The reason .this is an improper application of the definition of “knowingly” in section 562.016.3 is because knowledge of whether one’s conduct is — or is. not — a violation of, the law .is never an “attendant circumstance” of such conduct, or a “result” of such conduct, or a part of the “nature” of that conduct, as those terms are used in section 562.016.3. To avoid such an incorrect application of the definition of “knowingly,” section 562.021.5 provides:
Knowledge that conduct constitutes an ' offense, or knowledge of the existence, meaning or application of the statute defining an offense is not an element of an offense unless the statute clearly so provides.
§ 562.021.5, RSMo 2000 (emphasis added). See also, e.g., Bryan v. United States, 524 U.S. 184, 192-93, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) (because the maxim that ignorance of the law is no excuse fora *212 violation of that law, “unless the text of a statute dictates a different result, the term ‘knowingly1 merely requires proof of knowledge of the facts that constitute the offense” and does not refer to a “culpable state of mind or to knowledge of the law”); United States v. Int’l Minerals & Chem. Corp., 402 U.S. 558, 559, 563, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971) (the phrase “knowingly violates [applicable regulations]” requires knowledge of the facts that constitute the violation, not knowledge of the regulations themselves, because in the absence of a clear legislative mandate to the contrary, “ignorance of the law is no excuse”); United States v. George, 386 F.3d 383, 390 (2d Cir.2004) (“the criminal statutory mens, rea term ‘knowingly’ has attained a largely settled interpretation .. -. [which] signals that the statute only requires a finding of -general intent [not knowledge of the law] for conviction”).
■The definition of “knowingly” from section 562.016.3 requires that the actor know and appreciate the facts about the actor’s conduct, but it does not require that the actor know and appreciate the law governing such conduct. As a result, the intent of the decision to use the term “knowingly” in the 2004 amendment to section 610.027.3 was to create a category of cases in which an award of attorney’s fees may be made that is bigger than just violations of the Sunshine Law committed “purposely,” but not so large as to include every conceivable violation. The new category of cases in which the Sunshine Law violation is committed “knowingly” still excludes cases in which the defendant was unaware of the facts that constituted the Sunshine Law violation (i.e., cases in which the defendant did not know that a particular record was requested or, if requested, that it was not produced), but now includes all cases in which the defendant knew a record had been requested and knew it was not produced, regardless of whether the defendant actually knew (or had reason to know) that its conduct was a violation of the Sunshine Law. By making an attorney’s fee award in such cases permissive rather than mandatory, it is clear that the General Assembly allowed the trial court to exercise discretion in determining which “knowing” violations merited such an award and which did not.
III. The Case Should Be Remanded for Application of the Proper Definitions of “Knowingly” and “Purposely”
As explained above, a defendant “purposely” violates the Sunshine Law when the defendant acts with the plan or purpose of committing such a violation. On the other hand, a defendant “knowingly” violates the Sunshine Law when the defendant knows that a particular record is requested and knows that it has not disclosed it — regardless of whether the defendant knows (or even reasonably should have known) whether the failure to produce the record constitutes a violation of the Sunshine Law.
Using these definitions, there was a basis in the evidence to conclude that the defendant in this case (the “City”) acted purposely, but there can be no doubt that the City acted knowingly. Accordingly, this case should be- remanded so that the trial court can apply the proper definitions of “purposely”- and “knowingly.” If the trial court does not find that a preponderance of the evidence supports the inference that the City “purposely” violated the Sunshine Law under section 610.027.4, it should exercise its discretion and determine whether the fact that the City “knowingly” violated the Sunshine Law is of such gravity and culpability in this case to merit an award of attorney’s fees under section 610.027.3.
The long and short of the City’s argument is that it did not know that its failure *213 to disclose the inactive investigation report was a violation of the Sunshine Law because one provision of the Sunshine Law (i.e., section 610.021(3)) seemed to permit closure while another provision of the Sunshine Law (i.e., section 610.100.2) required disclosure. Properly defined, this argument is irrelevant to the question of whether the City “knowingly” violated the Sunshine. Law because it knew that the report had been requested and it knew that the report was not being disclosed.
Moreover, the City’s “reasonable mistake of the law” defense does not preclude a finding that the City “purposely”, violated the Sunshine Law because — long before the City’s conduct in this case — this Court unambiguously held that the failure to disclose an investigative report under section 610.100.2 violates the Sunshine Law. See Guyer v. City of Kirkwood, 38 S.W.3d 412, 414 (Mo. banc 2001) (expressly rejecting the argument that section 610.021(3) may be used to justify closure where section 610.100.2 requires disclosure).[3] Having had the benefit of Guyer for more than a decade after it was decided, it simply was not reasonable for the City to believe that its conduct did not violate the Sunshine Law; therefore, the trial court could conclude that the City acted with a conscious plan or design to commit such a violation.
Stroke teaches that, when a defendant makes a conscious decision to violate the Sunshine Law to avoid violating a lesser obligation, it is inescapable that the defendant “purposely” violates the Sunshine Law. Strake, 473 S.W.3d at 646 (defendant subordinated its obligation under the Sunshine Law to a lesser obligation, i.e., a contractual duty of confidentiality). Here, there was evidence from which the trial court could find that the City was pursuing one (or both) of two such lesser obligations: (a) a local ordinance prohibiting disclosure or (b) the desire to protect itself from potential civil claims based on the actions of its employees. If the trial court finds that the City subordinated its obligation under section 610.100.2 (rendered clear and certain by Guyer) to one or both of these lesser obligations, then — under Stroke — it must find that the City “purposely” violated the Sunshine Law. ■
Accordingly, this case should be remanded so that the trial court can apply the proper definition of “knowingly” and the holding in Stroke (which had, not beqn decided at the time of the trial court’s decision in this case) concerning “purposely.” If the trial court does not find that á preponderance of the evidence supports the inference that the City’ “purposely” violated the Sunshine Law under section 610.027.4 and Stroke, the trial court then must exercise its discretion and determine whether'the fact that the City “knowingly” violated the Sunshine Law is of such gravity and culpability in this case to merit an award of - attorney’s fees under section 610.027.3.

. For this same reason, I disagree with Judge Wilson's dissent that this Court should import the definition the General Assembly chose for the criminal code.

. This still excludes cases in which the defendant was'unaware of the facts that constituted the Sunshine Law violation, e.g., cases in which the defendant did not know that a particular record was requested or, if requested, that it was not produced.

. The principal opinion reviews whether the circuit court’s judgment was supported by substantial evidence or was against the weight of the evidence, even though the appellant did not brief or argue that point in the court of appeals prior, to transfer or in this Court. The issue raised in the court of appeals and still in this Court is that the facts found by the circuit court do not support its legal conclusion,

. Section 610.100.2 requires disclosure of the investigative report because the underlying investigation was inactive. “[Ijnvestigative reports of all law enforcement agencies are closed records until the investigation becomes inactive.” Section 610.100.2. Even if the investigation were still, active, disclosure would be required pursuant to subsection 4: "Any person, including a[n] ... attorney for a person, ... involved-in any incident or whose property is involved in an incident, may obtain any records closed pursuant to this section ,. -. for purposes of investigation of any civil claim....” Section 610.100.4.

, Kansas City Star Co. v. Fulson, 859 S.W.2d 934 (Mo.App.1993) (aggrieved party sought declaratory judgment and an injunction); Tribune Pub. Co. v. Curators of University of Missouri, 661 S.W.2d 575 (Mo.App.1983) (same).

. Because section 562.016 has remained unchanged- since -it was passed in 1977, these definitions were available to the General-As- ' sembly when'it first passed séction 610.027 in 1982 and when it amended that section- in 2004,

. Section- 610.100.2 requires disclosure of the investigative report because the -underlying investigation was inactive. ''PQnvestigative reports of all law enforcement agencies are closed records until the investigation becomes inactive.” § 610.100.2. Even if the investigation were still active, disclosure would be required under subsection 4: "Any person, including a[n]' v . attorney for a person, ... involved in any incident or whose property is involved in an incident, may obtain any records closed pursuant to this section ... for purposes of investigation of any civil claim. ...’’ § 610.100.4.