

# SUPREME COURT OF MISSOURI
## en banc

RACHAL LAUT, f/k/a/ RACHAL GOVRO, )
and JOHN M. SOELLNER, )
                                 )

       **Appellants,** )

                                 )

vs. )           **No. SC95307**

                                 )

**CITY OF ARNOLD,** )

       **Respondent.** )

### Appeal from the Circuit Court of Jefferson County
### Honorable Gary Kramer, Judge

### Opinion issued June 28, 2016

Plaintiffs Rachal Laut and John Soellner appeal the trial court's judgment that Plaintiffs are not entitled to a civil penalty or attorney's fees under section 610.027[1] for Defendant City of Arnold's (the city) failure to provide an internal affairs report in response to Plaintiffs' Sunshine Law request because the failure to disclose the report did not result from a knowing or purposeful violation of the Sunshine Law. This Court affirms.

What constitutes a knowing or purposeful violation of the Sunshine Law is a question of law. Section 610.027 expressly states that a knowing violation occurs when the public entity "has knowingly violated sections 610.010 to 610.026." *§ 610.027.3.* To

---

[1] All statutory references are to RSMo Supp. 2013 unless otherwise stated.

prove a "knowing" violation, a party, therefore, must do more than show that the city knew that it was not producing the report; as this Court noted in *Strake v. Robinwood West Cmty. Improvement Dist., 473 S.W.3d 642, 645 (Mo. banc 2015),* section 610.027.2 requires proof that the public entity knew that its failure to produce the report violated the Sunshine Law. *§ 610.027.3.* The standard required to prove a "purposeful" violation under section 610.027 is greater – the party must show that the defendant "purposefully violated section 610.010 to 610.026", which this Court has defined as acting with "a 'conscious design, intent, or plan' to violate the law and d[id] so 'with awareness of the probable consequences.'" *Spradlin v. City of Fulton, 982 S.W.2d 255, 262 (Mo. banc 1998).*

Applying these standards, the trial court found, after an evidentiary hearing, that the city's failure to disclose a particular investigative internal affairs report was neither knowing nor purposeful. In so doing, it rejected Plaintiffs' contention that the city purposefully or knowingly stonewalled the Sunshine Law request and intentionally violated the law. It was up to the trial court to weigh the evidence and resolve the factual question whether the city's conduct fell within the definitions of knowing or purposeful violations under section 610.027. The judgment is affirmed.

## I. *FACTUAL AND PROCEDURAL HISTORY*

In 2010, Plaintiffs believed that one or more Arnold police department employees had accessed Plaintiffs' confidential records in the "Regional Justice Information System" (REJIS) database. In September 2010, Ms. Laut filed a complaint with the Arnold police department, and the department completed an internal affairs investigation.

2

Plaintiffs hired counsel, and on October 11, pursuant to Missouri's Sunshine Law, section 610.010, et seq., counsel sent the city a letter requesting "any and all incident reports, Internal Affairs investigative reports and records of any type (including e-mail and text messages)" regarding:

1. the use of the REJIS computer network by any department employee, including two specifically named employees, to access information about Plaintiffs,
2. any communications by the two named employees or others with law enforcement regarding a criminal background check of Plaintiffs,
3. the reasons for termination of one of the two employees, and
4. the reasons for disciplinary actions taken against the other employee.

The letter stated the attorneys were seeking the documents for the purpose of investigating civil claims.

Section 610.100.2 provides that

All incident reports and arrest reports shall be open records. Notwithstanding any other provision of law other than the provisions of subsections 4, 5 and 6 of this section or section 320.083, investigative reports of all law enforcement agencies are closed records until the investigation becomes inactive. If any person is arrested and not charged with an offense against the law within thirty days of the person's arrest, the arrest report shall thereafter be a closed record except that the disposition portion of the record may be accessed and except as provided in section 610.120.

The city's attorney replied by letter that there had been no criminal investigation and, therefore, no incident report or arrest record. The city stated there had been an internal affairs investigation but the resulting report and all other documents requested by Plaintiffs were closed under section 610.021 because they contain personnel information about specific employees.

Plaintiffs' counsel again demanded the records on October 22 and claimed

Plaintiffs were entitled to them under section 610.100.4, which provides that "any person … may obtain any records closed pursuant to this section or section 610.150 for purposes of investigating a civil claim."[2]

On December 2, 2010, Plaintiffs filed their petition for preliminary relief, disclosure of records, statutory damages and attorney's fees. Plaintiffs claimed that the records were part of a criminal investigation and were open records because, whatever the original motivation for the investigation, under federal law someone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains … information from any protected computer" commits a federal crime that is punishable by fines or imprisonment. *18 U.S.C. § 1030(a)(2)*. Plaintiffs alleged that the city knowingly or purposely violated the Sunshine Law and, therefore, was subject to the statutory remedies of civil penalties, costs, and attorney's fees.

Once it is determined that a governmental body is subject to the Sunshine Law and that it has claimed that a record is closed, the burden is on the governmental body to demonstrate that the Sunshine Law does not require disclosure. *See section 610.027.2*. Plaintiffs filed a motion for summary judgment, claiming that the internal affairs investigation was conducted in response to complaints of improper or criminal activity, and once the investigation was complete all records relating to the investigation were public under section 610.100.2, and that the city had failed to show an exemption applied.

---

[2] Although the city sought its counsel's legal advice and counsel wrote to Plaintiffs in response to their request to explain the city's belief that certain documents were not subject to disclosure, the city did not file suit seeking a judicial interpretation of its

4

The trial court overruled the motion. The city then moved for summary judgment, claiming the investigation was not a criminal investigation but was limited to determining the employees' fitness to perform their jobs and the resulting report related to disciplinary matters that are exempt from disclosure. In support of its motion, the city submitted the police chief's affidavit stating that, after receiving a complaint from Plaintiffs that two employees had "abused their access to REJIS for personal reasons," he "ordered that an Internal Affairs investigation be commenced for the limited purpose to determine the fitness of the employees to perform their respective duties. … I have not and will not produce the personnel records or closed Internal Affairs report of my employees pursuant to City Ordinance."

The trial court granted the city's motion. Plaintiffs appealed, and the court of appeals held there was a dispute whether the internal affairs investigation was a criminal investigation and remanded the case for the trial court to conduct an *en camera* review of the internal affairs report and of other documents responsive to the two requests relating to employees improperly accessing REJIS and communicating about background checks. *Laut v. City of Arnold, 417 S.W.3d 315, 320-21 (Mo. App. 2013)*. The court of appeals, however, affirmed the trial court grant of summary judgment "as it relates to any public records other than investigative reports, containing only information responsive to Appellants' requests for the reasons for discipline of [the two named employees]." *Id.*

On May 7, 2014, the trial court held a hearing at which the city's counsel attested

obligations under the Sunshine Law, nor did they seek a formal attorney general or city attorney opinion as permitted by section 610.027.6.

5

that the records were "a full and accurate representation of all of the documents that are contained within Ms. Laut's personnel records and all records that are pertaining to the case." After reviewing the records *en camera*, the trial court found that, "with the exception of the Internal Affairs report," all the other records were personnel records clearly exempt from disclosure under sections 610.021(3) relating to disciplinary actions and 610.021(13) relating to personnel records.

With regard to the internal affairs report, the trial court found that the city's "contention that the Internal Affairs report is in whole, or in part, a personnel record is wholly inaccurate." The trial court stated that the internal affairs investigation was initiated after a complaint of alleged criminal activity and the investigation became inactive when the subject of the investigation resigned, making the internal affairs report a record of a closed investigation that must be disclosed under section 610.100.2. *See also § 610.011* ("Except as otherwise provided by law, … all public records of public governmental bodies shall be open to the public for inspection and copying as set forth in sections 610.023 to 610.026[.]"). Accordingly, the trial court ordered the disclosure of the report with a portion related to employees' timesheets redacted.

Apparently presuming that Plaintiffs would seek fees under section 610.100.5, the trial court set a hearing "to determine whether, pursuant to § 610.100.5, Defendant City of Arnold's failure to disclose the Internal Affairs report was 'substantially unjustified under all relevant circumstances' such that Defendant should be required to pay the reasonable costs and attorney's fees of Plaintiff." Instead, Plaintiffs filed an application for attorney's fees and a civil penalty under section 610.027, which provides for

6

attorney's fees as well as for a fine in an amount up to $5,000 for a purposeful violation or attorney's fees and a fine in an amount up to $1,000 for a knowing violation in addition to other remedies provided by statute. [3]  A hearing was held on that claim at which both parties presented evidence.

The trial court issued its judgment denying the civil penalty and attorney's fees because, it said, "this Court cannot on this record find that the Defendant City of Arnold either knowingly or purposefully violated the provisions of RSMo §§ 610.010-610.035." Plaintiffs appealed.  The court of appeals transferred the case to this Court after opinion under Mo. Const. art. V, sec. 10.

## II.    STANDARD OF REVIEW

"An issue of statutory interpretation is a question of law, not fact." *Treasurer of State-Custodian of Second Injury Fund v. Witte, 414 S.W.3d 455, 460 (Mo. banc 2013).* Accordingly, the meaning of the terms knowing and purposeful as set out in section 610.027 is a question of statutory interpretation and, so, is a question of law for this Court.  The scope of the application of section 610.010 to section 610.200 "shall be

---

[3] Section 610.100.5 allows a plaintiff to petition for disclosure of an investigative report, "which would otherwise be closed pursuant to this section[,]" and permits attorney's fees if the decision not to open the report is "substantially unjustified."  Section 610.027 provides remedies in an action to enforce the Sunshine Law requirements of sections 610.010 to 610.026 "in addition to those [remedies] provided by any other provision of law."  It provides that "[u]pon a finding … that a public governmental body … has knowingly violated sections 610.010 to 610.026, the public governmental body … shall be subject to a civil penalty in an amount up to one thousand dollars. … the court may order the payment by such body or member of all costs and reasonable attorney fees …. Upon a finding … that a public governmental body … has purposely violated sections 610.010 to 610.026, the public governmental body … shall be subject to a civil

liberally construed and their exceptions strictly construed to promote" the public policy of open records. *§ 610.011.* But where, as here, the issue is whether a penalty and attorney's fees should be imposed, the "portions of the Sunshine Law that allow for imposition of a civil penalty and an award of attorney fees and costs are penal in nature and must be strictly construed." *Strake, 473 S.W.3d at 645 n.5,citing Spradlin, 982 S.W.2d at 262.*

Whether the conduct of the city brings it within the scope of the statutory definitions of knowing or purposeful conduct is a question of fact. *State v. Selman, 433 S.W.2d 572, 575 (Mo. 1968)* (question of intent is fact question for the jury).[4] Such factual determinations are reviewed by this Court under the standard set out in *Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).* Under that standard, it was up to the trial court, as fact finder, to determine whether the city officials' conduct was knowing or purposeful as those terms are used in section 610.027 when the city declined to release the internal affairs report. *See, e.g., Spradlin, 982 S.W.2d at 263* (the record supported trial court's decision there was no purposeful violation of the Sunshine Law); *R.L. Polk & Co. v. Missouri Dep't of Revenue, 309 S.W.3d 881, 884, 887* (Mo. App 2010) (same).

Because Plaintiffs argued that the application of the statute to the facts was a question of law to be determined *de novo*, they did not set out in their point relied on

---

penalty in an amount up to five thousand dollars. … the court shall order the payment by such body or member of all costs and reasonable attorney fees …." *§§ 610.027.3-.027.4.*

[4] *See also American Family Mut. Ins. Co. v. Pachetti, 808 S.W.2d 369, 371 (Mo. banc 1991)* (what an insured expected or intended is a question of fact); *Watson v. Landvatter, 517 S.W.2d 117, 121-22 (Mo. banc 1974)* (intention of a testator is a factual question).

8

whether they believe that the judgment was not supported by substantial evidence, or whether they believe it was against the weight of the evidence. This Court has recently reiterated that these two standards are separate and distinct and that a party must set out these claims in separate points relied on. *Pasternak v. Pasternak, 467 S.W.3d 264, 270 n.4 (Mo. banc 2015); Ivie v. Smith, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014).* Because Plaintiffs do raise these questions in the argument section of their brief and the city did not object to their absence from the point relied on, this Court, nonetheless, has exercised its discretion to review the record to determine whether the judgment is supported by substantial evidence and is not against the weight of the evidence.

A trial court's judgment is not supported by substantial evidence when "there is no evidence in the record tending to prove a fact that is necessary to sustain the circuit court's judgment as a matter of law." *Ivie, 439 S.W.3d at 200.* "When reviewing whether the circuit court's judgment is supported by substantial evidence, appellate courts view the evidence in the light most favorable to the circuit court's judgment and defer to the circuit court's credibility determinations[,] … no contrary evidence need be considered on a substantial-evidence challenge … [and] [c]ircuit courts are free to believe any, all, or none of the evidence presented at trial." *Id.* "A claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment[,]" and a trial court's "judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." *Id. at 206* (internal quotations omitted). "Appellate courts should exercise the power to set aside a decree or judgment on the

9

ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy, 536 S.W.2d at 32*.

## III.    *KNOWING AND PURPOSEFUL VIOLATIONS OF SUNSHINE LAW*

Section 610.027 allows any aggrieved person to seek judicial enforcement of the Sunshine Law and provides the remedies of civil monetary penalties, costs and attorney's fees for knowing or purposeful violations of that law.  The city does not appeal the trial court holding that the city violated the Sunshine Law and should have produced a redacted version of the internal affairs report.  The question on appeal is limited to whether the trial court erred in finding that the violation was not purposeful or knowing as those terms are used in section 610.027, which states that:

> 3. Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body has *knowingly violated sections 610.010 to 610.026*, the public governmental body or the member shall be subject to a civil penalty in an amount up to one thousand dollars. *If the court finds that there is a knowing violation of sections 610.010 to 610.026*, *the court may order* the payment by such body or member *of all costs and reasonable attorney fees* to any party successfully establishing a violation. The court shall determine the amount of the penalty by taking into account the size of the jurisdiction, the seriousness of the offense, and whether the public governmental body or member of a public governmental body has violated sections 610.010 to 610.026 previously.
>
> 4. Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body has *purposely violated sections 610.010 to 610.026, the public governmental body or the member shall be subject to a civil penalty in an amount up to five thousand dollars. If the court finds that there was a purposeful violation of sections 610.010 to 610.026, then the court shall order* the payment by such body or member *of all costs and reasonable attorney fees* to any party successfully establishing such a violation. The court shall determine the amount of the penalty by taking into account the size of the jurisdiction, the seriousness of the offense, and whether the public

10

governmental body or member of a public governmental body has violated sections 610.010 to 610.026 previously.

*§§ 610.027.3* and *610.027.4* (emphasis added).

### A. Definitions of knowing and purposeful in section 610.027

This Court very recently addressed the dispositive issue here: what is required to show a knowing or purposeful violation of the Sunshine Law? *Strake* held that a purposeful violation occurs when the party acts with "'a conscious design, intent, or plan' to violate the law and d[id] so 'with awareness of the probable consequences.'" *Strake, 473 S.W.3d at 645, citing Spradlin, 982 S.W.2d at 262.* *Strake* also stated that "[a] knowing violation requires proof that the public governmental body had 'actual knowledge that its conduct violated a statutory provision.'" *Id.*

In support, *Strake* noted that *White v. City of Ladue, 422 S.W.3d 439 (Mo. App. 2013),* had been presented with a similar issue as to whether a city had knowingly violated the Sunshine Law. *White* found it did not because, while the city knew it charged the plaintiff for the time the city's attorney spent reviewing the request, the city did not have actual knowledge that its actions violated the Sunshine Law. *422 S.W.3d at 452-53.*

While not precedential, the federal district court's unpublished decision in *Wright v. City of Salisbury, Mo., No. 2:07CV00056, 2010 WL 2947709, at \*5-6 (E.D. Mo. July 22, 2010)* is also instructive. That case involved a claim that the city board of aldermen violated the Sunshine Law when it met in closed session without announcing the reason why it was in closed session, as required under the Sunshine Law. *Id. at \*1.* The federal district court was called on to apply the definition of "knowing" that this Court would

11

apply. It found "that the Missouri Supreme Court would hold that the drafters did not intend to impose the specter of civil penalties and attorneys' fees on a strict liability basis." *Id. at \*5.* Accordingly, *Wright* held that it would not impose a penalty or attorney's fees because "there was no credible evidence that any of the Defendants had a purpose or intent to violate the Sunshine Law. Nor was there any credible evidence that any Defendant knew that his actions might violate the Law. … the failure to announce the reason or specific statutory exception for going into closed session was inadvertent, and was not 'knowing' within the meaning of the statute." *Id. at \*6.*

The determinations in *Strake, Wright* and *White* that a knowing violation requires knowledge of the violation and that a purposeful violation requires proof of a conscious plan or design to violate the statute are based on the most definitive source: the language of the Sunshine Law itself. While a violation of the Sunshine Law does not itself require knowledge that a violation is occurring, imposition of a penalty does. Section 610.027.3 states that a penalty shall be imposed and attorney's fees and costs may be assessed only:

> Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body *has knowingly violated sections 610.010 to 610.026, ….*

(Emphasis added).

That is, section 610.027.3 does not impose strict liability. Rather, it requires that the governmental body knowingly violated the Sunshine Law, not merely that it knowingly failed to produce the document, for the trial court to impose a civil penalty or assess costs and attorney's fees. The court, therefore, must find that the defendant knew it was violating these provisions of the Sunshine Law for the statute to authorize a fine or

12

penalty.[5]  Similarly, section 610.027.4 states that a penalty, attorney's fees and costs shall be assessed:

> Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body *has purposely violated sections 610.010 to 610.026, ….*

(Emphasis added).

Again, this means that the governmental body's purpose must be to violate the Sunshine Law, not merely to not produce the report.  Purposeful conduct means more than actual knowledge.  "To purposely violate the open meetings law a member of a public governmental body must exhibit a 'conscious design, intent, or plan' to violate the law and do so 'with awareness of the probable consequences.'" *Spradlin, 982 S.W.2d at 262*.  *Accord Strake, 473 S.W.3d at 645*.  Contrary to the suggestion of the dissenting opinions, this is a far greater burden than required to prove a knowing violation, for to prove a purposeful violation the plaintiff must prove more than "mere intent to engage in the conduct resulting in the violation[.]" *Spradlin, 982 S.W.2d at 262*.  Plaintiff must show that the conscious plan or scheme, the purpose of the conduct, was to violate the law.

*Strake* itself provides a good example of the distinction between a knowing and a purposeful violation.  The public entity in that case, Robinwood, admitted it knew that

---

[5]  The Sunshine Law's definition of "knowing", therefore, varies from the definition of that word used in Missouri criminal statutes, which says "a person 'acts knowingly' … when he is aware of the nature of the conduct or that those [attendant] circumstances exist or … when he is aware that his conduct is practically certain to cause that result" of his conduct. *§ 562.016*.  *See also § 191.900* (definition of knowingly in "Health Care Payment Fraud and Abuse" statute); *§ 197.500* (definition of knowingly in "Employee

13

settlement agreements generally are open records but failed to produce the settlement agreement requested in that case because it was concerned that disclosure would breach the settlement agreement itself, which contained a confidentiality clause. *473 S.W.3d at 646*. It, therefore, chose not to produce the settlement agreement so as not to violate the confidentiality clause.

This Court held in *Strake* that this constituted a knowing violation of the Sunshine Law because "[t]he logic of the trial court's judgment – and Robinwood's argument [that it knew it had conflicting legal obligations] – amounts to an acknowledgement that Robinwood had actual knowledge of its Sunshine Law obligations." *Id. Strake* further found that "Robinwood's decision to withhold the requested documents … to avoid potential contractual liability amounts to 'purposely' violating the Sunshine Law as part of a 'conscious design, intent, or plan' to violate the law … 'with awareness of the probable consequences.'" *Id.*

This Court reaffirms its statement in *Strake* that a knowing violation requires that the public governmental body had actual knowledge that the Sunshine Law required production but did not produce the document. A purposeful violation involves proof of intent to defy the law or achieve further some purpose by violating the law, such as Robinwood's plan to avoid liability for breach of contract.

The dissenting opinions suggest that this holding is in error and that this Court should discard the definition of a knowing violation that it reaffirmed in *Strake* just last year. Judge Fischer's dissent suggests that nothing in the statute requires knowledge that

Disqualification List" statute).

14

the failure to produce a report violates the Sunshine Law and that this Court should utilize a dictionary definition of knowing conduct instead. By contrast, Judge Wilson's dissent suggests that this Court should substitute the definition of "knowing" used in the criminal statutes and points out that one can be guilty of knowingly violating a criminal law without proof that one knew that one's conduct violated that law. His dissent says the same should be true for imposing monetary penalties under the Sunshine Law.

Certainly the legislature could adopt a statute that fit the molds advocated for by either of the dissents. But it has not done so yet. The question before the Court *is not* whether proof of a Sunshine Law violation requires proof that the party knew it was violating the Sunshine Law. It is well-settled that no such requirement exists to prove a Sunshine Law violation.

But, in the case before us, the question is the separate one of whether *a penalty in the form of attorney's fees and costs* must or should be awarded as a result of a Sunshine Law violation. To answer that question, the legislature set out a different standard. Judge Fischer's dissent is incorrect that the statute leaves us without guidance as to what the alleged violator must know in order to be liable for attorney's fees. The legislature was quite specific – to obtain a *penalty*, one must do more than prove that one knew that one did not produce a particular document. Section 610.027.3 permits the award of attorney's fees *only* "[u]pon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body *has knowingly violated sections 610.010 to 610.026."* (Emphasis added). Judge Wilson's dissent is incorrect that the legislature thereby intended to allow the penalty of attorney's fees to be awarded

15

upon the same showing of "knowledge" of one's actions as is sufficient in criminal cases. The legislature allowed such fees to be awarded based on proof by a preponderance of the evidence, a lesser standard than that required by the criminal law. It balances this lesser standard of proof, however, by expressly predicating liability on a finding of something *more* than merely showing one knew what one was doing; it requires proof that the alleged violator *knew that the conduct in question violated the Sunshine Law.* The dissents' arguments for a different standard are better directed at the legislature, not this Court.

### B. Trial court did not err in finding the city's violation did not knowingly or purposely violate Sunshine Law

Substantial evidence in the record supports the trial court's finding that the city did not knowingly or purposely violate the Sunshine Law, and that finding is not against the weight of the evidence. As Plaintiffs note, they introduced evidence that the internal affairs report was a criminal investigation because it was investigating conduct that appeared to violate federal law. Further, Plaintiffs emphasize, the trial court found following its *en camera* review of the report that the city's description of the report as merely a personnel report was "wholly inaccurate." They note that in *Guyer v. Kirkwood*, 38 S.W.3d 412, 415 (Mo. banc 2001), the Court found that, when a citizen complaint alleges criminal conduct by an officer, "it should be *presumed* that such alleged criminal conduct was the subject of the investigation, and the report generated by the investigation must be disclosed." (Emphasis added).

16

But, here, the question is not whether the city violated the Sunshine Law in failing to produce the report but rather whether that violation was knowing or purposeful. Had the finding that reliance on the personnel exemption was wholly inaccurate been dispositive of that issue, there would have been no need for an evidentiary hearing. But the trial court did hold such a hearing, for it believed, correctly, that a question of fact existed as to whether the city's reliance on the exemption was knowing or purposeful, or was merely wrong.

At that hearing, the city offered evidence that it thought the internal affairs investigation involved a personal dispute between employees and not a criminal investigation, that the investigation was conducted to determine the employees' fitness to perform their duties, and that the city had been advised by its attorney and believed the internal affairs report along with all other requested related records were exempt from disclosure because they were records of disciplinary action and personnel matters. The internal affairs report was the only record that the trial court ordered be disclosed following the *en camera* review, showing that the city's belief was not unreasonable as to most of the requested records. The city's letter responding to Plaintiffs' request for the internal affairs report supports its claim that the city's counsel advised the city that the report was a closed personnel record, in contrast to the defendant's counsel in *Strake*, who advised the requested records were open records. *473 S.W.3d at 646*.

As Plaintiffs note, reliance on counsel is not in itself a defense where, as here, no suit has been brought to determine whether the city could close the report and no request was made for a formal opinion from the attorney general or city attorney as permitted by

17

section 610.027.6. But that does not make such reliance irrelevant to the determination of the city's state of mind. The trial court might have agreed with Plaintiffs that the city was stonewalling and was using its attorney's letter and advice as a way to avoid the Sunshine Law. But that is not what the trial court found. The trial court's prior interlocutory ruling requiring the production of the report and finding that the city was wholly inaccurate in characterizing the record as only a personnel report is not inconsistent with its later finding, after an evidentiary hearing, that the violation was neither knowing nor purposeful – being wrong is not the same as knowing one is violating the law or acting purposely to violate the law. *See Spradlin, 982 S.W.2d at 260, 263; R.L. Polk, 309 S.W.3d at 886-87.*

Indeed, the trial court itself first held all the records were exempt from disclosure, including the report, until after it reviewed the documents *en camera* following the first appeal and remand. It then considered all of the evidence and determined that, considered in full, the evidence did not support a finding of a knowing or purposeful violation. Apparently, the dissenting opinions would have this Court substitute its judgment for that of the trial court and hold that the evidence supports a knowing or purposeful violation. The question before this Court, however, is not whether the evidence *could* support such a showing but whether the trial court committed reversible error in weighing the evidence, making credibility determinations, and determining to the contrary. "When the evidence supports two reasonable but different inferences, this Court is obligated to defer to the circuit court's assessment of the evidence." *Blanchette v. Blanchette, 476 S.W.3d 273, 278 n.1 (Mo. banc 2015).* Substantial evidence supported

18

the trial court's ruling, and it was not against the weight of the evidence. This Court, under its standard of review, therefore must affirm.

## IV.   CONCLUSION

For the reasons set out above, the trial court did not err in entering judgment against Plaintiffs on the question of civil penalties and attorney's fees. The judgment is affirmed.

_____
**LAURA DENVIR STITH, JUDGE**

Breckenridge, C.J., Draper, Teitelman and Russell, JJ., concur; Fischer, J., dissents in separate opinion filed; Wilson, J., dissents in separate opinion filed.

19



# SUPREME COURT OF MISSOURI
## en banc

RACHAL LAUT, f/k/a/ RACHAL GOVRO, )
and JOHN M. SOELLNER, )
)
        Appellants, )
)
v. )    No. SC95307
)
CITY OF ARNOLD, )
)
        Respondent. )

## DISSENTING OPINION

I respectfully dissent. In defining "knowingly" for purposes of § 610.027.3,[1] which this Court has not previously been required to do, the principal opinion relies on unpersuasive dicta and ignores this Court's basic rules of statutory construction.[2] Because the General Assembly did not define "knowingly," this Court should rely on its rules of statutory construction, define the term using its usual and ordinary meaning as derived from the dictionary, and remand the case to the circuit court for further consideration of whether it misapplied the law to the facts as found.

---

[1] Statutory references are to RSMo Noncum. Supp. 2014, unless otherwise indicated.
[2] For this same reason, I disagree with Judge Wilson's dissent that this Court should import the definition the General Assembly chose for the criminal code.

## I. History of Sunshine Law Remedies

When the Sunshine Law was adopted in 1973, it had no "teeth." *Kansas City Star Co. v. Shields*, 771 S.W.2d 101, 104 (Mo. App. 1989). This led the General Assembly to adopt various remedies to ensure meaningful enforcement of the law. *Id.* One of the "teeth" added in 1982 was a provision allowing the circuit court to order the defendant to pay the plaintiff's attorney's fees in cases in which the defendant's actions were sufficiently culpable, i.e., when the defendant "purposely" violated the Sunshine Law. § 610.027.3, RSMo Supp. 1983. In deciding where to draw the line between Sunshine Law violations for which an award of attorney's fees may (and may not) be made, the General Assembly had to balance two competing realities. First, the costs of bringing a Sunshine Law claim (including, most notably, attorney's fees) are so high that they present a considerable barrier to enforcement of the Sunshine Law by members of the public even when they have a meritorious claim. Second, even when a public governmental body acts with great diligence and utmost good faith, Sunshine Law violations still may occur when the governmental body makes a mistake of fact (e.g., it does not know that a particular record has been requested or is not being produced) or a mistake of law (e.g., it fails to understand that the Sunshine Law requires disclosure in the circumstances at hand). The General Assembly struck that balance in 1982 by providing that the circuit court may award attorney's fees only when the defendant "purposely" violates the Sunshine Law. § 610.027.3, RSMo Supp. 1983.

Because the General Assembly did not define "purposely" in § 610.027.3, this Court addressed the meaning of that term in *Spradlin v. City of Fulton*, 982 S.W.2d 255

(Mo. banc 1998), and held that a defendant "purposely" violates the Sunshine Law only when the defendant has a "conscious design, intent, or plan to violate the law and [acts] … with awareness of the probable consequences." *Id.* at 262 (internal quotation marks omitted). This Court acknowledged that this definition makes an award of attorney's fees possible only in the rarest of cases and, therefore, that § 610.027.3 would make little practical difference either in deterring Sunshine Law violations or incentivizing members of the public to pursue meritorious Sunshine Law claims.

> **This may be so and the legislature might well consider the issue.** However, courts must give effect to the language as written. The plain language of the statute only authorizes assessment of attorney's fees against an individual upon a demonstration of a 'purposeful' violation of the law. There is no room for construction even when a court may prefer a policy different from that enunciated by the legislature.

*Spradlin*, 982 S.W.2d at 261 (internal citations and quotations omitted) (emphasis added).

In 2004, the General Assembly took the Court at its word and amended § 610.027 to expand the category of cases in which attorney's fees may be awarded. The 2004 amendments keep the original category of cases in which the defendant "purposely" violates the Sunshine Law but make an award of attorney's fees in such cases mandatory. Section 610.027.4. In addition, the 2004 amendments allow (but do not require) the circuit court to award attorney's fees when the defendant "knowingly" violates the Sunshine Law. Section 610.027.3.

Every purposeful violation also is a knowing violation, but the opposite is not true. The two terms are not synonymous. If they were, the General Assembly's decision to add this new category of cases would be meaningless. *See Cox v. Dir. of Revenue*, 98 S.W.3d

3

548, 550 (Mo. banc 2003) (when the General Assembly amends a statute, this Court must presume it intended to effect a change to the prior law); *see also State v. Liberty*, 370 S.W.3d 537, 552 (Mo. banc 2012) (quoting *Kilbane v. Dir. of Dep't. of Revenue*, 544 S.W.2d 9, 11 (Mo. banc 1976)) ("The legislature is not presumed to have intended a useless act.").  Instead, it is clear the General Assembly intended the 2004 amendments to expand the category of cases in which attorney's fees may be awarded, while leaving to the discretion of the circuit court the decision of whether to award such fees in all but the most culpable cases (i.e., where the defendant "purposely" violates the Sunshine Law).

## II.     The Proper Definition of "Knowingly"

The principal opinion takes its definition of "knowingly" from *Strake v. Robinwood West Cmty. Improvement Dist.*, 473 S.W.3d 642, 645 (Mo. banc 2015) ("A knowing violation requires proof that the public governmental body had 'actual knowledge that [its] conduct violated a statutory provision.'") (alteration in original).  But the holding of *Strake* was that the defendant "purposely violated" the Sunshine Law for purposes of a mandatory attorney's fee award pursuant to § 610.027.4.  If a violation is committed purposely, it necessarily is committed "knowingly."  Because it was not necessary for this Court to define "knowingly" in *Strake* to reach its holding, the definition given for "knowingly" was merely dicta.  *See, e.g., Rentschler v. Nixon*, 311 S.W.3d 783, 787 n.2 (Mo. banc 2010).

Not only was the definition in *Strake* dicta, but in my view, it also was dicta with a wholly unpersuasive origin.  The principal opinion states this Court "reaffirmed" the definition of "knowingly" in *Strake*.  But this Court had never before defined

4

"knowingly" for purposes of § 610.027.3—dicta or otherwise—and *Strake* simply lifted, without further explanation, the court of appeals' definition of "knowingly" from *White v. City of Ladue*, 422 S.W.3d 439, 452 (Mo. App. 2013). In *White*, the court of appeals stated, "A federal district court interpreting Missouri law has held that to establish a 'knowing' violation of the Sunshine Law, a plaintiff must show that the defendant had 'actual knowledge that the conduct violated a statutory provision.'" *Id.* at 452 (quoting *Wright v. City of Salisbury, Mo.*, No. 2:07CV00056, 2010 WL 2947709, at *5 (E.D. Mo. July 22, 2010)). The unpublished federal district court decision from which *White* took its definition of "knowingly," in turn, stated:

> The parties have not cited to the Court any cases that define "knowingly" in the context of the Sunshine Law. This Court believes, however, that the Missouri Supreme Court would hold that the drafters did not intend to impose the specter of civil penalties and attorney's fees on a strict liability basis. In the recent case of *R.L. Polk*, 309 S.W.3d at 881, the Missouri Court of Appeals found that the state Department of Revenue had violated the Sunshine Law by charging an across-the board "per record" fee for public records provided electronically over the internet. The Appellate Court, however, specifically recognizing the various mental states and corresponding penalty provisions in the Sunshine Law, held that this violation was not a "purposeful or knowing violation." *Id.* at 887. **The Appellate Court based this holding on the definition for "purposely" in *Spradlin,* 982 S.W.2d at 262. *Id.* Indeed, the trial court in *R.L. Polk* had held that "the knowing or purposeful violation described in subsections 3 and 4 of Section 610.027 requires a purpose to violate a statutory provision *or actual knowledge that the conduct violated a statutory provision.**" *See* Br. of Appellants-Cross-resp'ts Dep't of Revenue & Dir. of Revenue, Case No. WD70973, 2010 WL 718551, at *11 (Mo. Ct. App.) (emphasis added).

*Id.* at *5 (emphasis added, footnote omitted).

So, the principal opinion defines "knowingly" using language originating from an unpublished federal district court decision that notes—explicitly—that it was applying

5

the definition of "purposely" set forth in *Spradlin*. In so doing, the intended effect of the 2004 amendments are frustrated by rendering the sought-after expansion of cases in which attorney's fees may be awarded wholly illusory. That is, the principal opinion has given "knowingly" a definition that is the functional equivalent of "purposely." Such a construction is to be avoided. *See Liberty*, 370 S.W.3d at 552; *Cox*, 98 S.W.3d at 550; *Kilbane*, 544 S.W.2d at 11. The principal opinion argues its definition of "knowingly" is not functionally equivalent to "purposely" because proving the defendant had a purpose to violate the Sunshine Law is a greater burden than proving the defendant had actual knowledge that its conduct violated the Sunshine Law. But there is no practical distinction. Of course, to prove the defendant "purposely" violated the Sunshine Law pursuant to *Spradlin*'s definition, the plaintiff must prove the defendant had actual knowledge that its conduct violated the Sunshine Law. And if a plaintiff proves the defendant violated the Sunshine Law and proves the defendant had actual knowledge that its conduct violated the Sunshine Law, the reasonable inference is that the defendant acted with a "conscious design, intent, or plan" to violate the Sunshine Law—otherwise the defendant would not have acted as it did. *See Strake*, 473 S.W.3d at 646. A defendant's argument that it knew its conduct violated the Sunshine Law and acted regardless, but it did not actually have a "conscious design, intent, or plan" to violate the Sunshine Law when it acted, would be untenable in reality. The burden is the same.

Furthermore, to properly define a word in a statute that has been left undefined by the General Assembly, this Court does not look to an unreported federal district court's decision or even a Missouri court of appeals' decision. "This Court's primary rule of

6

statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009). When the General Assembly chooses to define a word, that definition is to be followed, but when it leaves a word undefined, "[i]t is a basic rule of statutory construction that words should be given their [usual] and ordinary meaning whenever possible." *State ex rel. Jackson v. Dolan*, 398 S.W.3d 472, 479 (Mo. banc 2013) (internal quotations omitted). The usual and ordinary meaning of a word is derived from a regular dictionary. *E.g., Miss Dianna's Sch. of Dance, Inc. v. Dir. of Revenue*, 478 S.W.3d 405, 408 (Mo. banc 2016). Therefore, in defining "knowingly" for purposes of § 610.027.3, this Court must simply turn to the dictionary.

In *Spradlin*, this Court mistakenly, in my view, relied on Black's Law Dictionary for the definition of "purposely." *Id.* I would not have referred to Black's Law Dictionary because if the General Assembly desired a particular legal definition, it could have provided one. The ordinary and usual meaning of a word will be found in a regular, non-legal dictionary, and the definition found in such will not always be compatible with the definition found in a legal dictionary. Nevertheless, in the 2004 amendments to § 610.027, the General Assembly declined to change the definition of "purposefully" that this Court had declared in *Spradlin*. As a result, the definition of "purposely" in the mandatory attorney's fee award provision in § 610.027.4 remains the definition this Court declared, even though, in my view, it should not have relied on Black's Law Dictionary. *See Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 388 (Mo. banc 2014) (Fischer, J., dissenting) ("Cases interpreting statutes carry the legislature's approval when it does

7

not take action to overrule them, and the legislature ratifies them by allowing them to stand while enacting particular legislation on the same subject matter."). The dictionary definition of "knowingly" is "in a knowing manner." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1252 (1993). The dictionary definition of "knowing" is "having or reflecting knowledge, information, or insight." *Id.* Applying the ordinary and usual meaning of "knowingly" to § 610.027.3 results in:

> Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body has [,when having knowledge, information, or insight,] violated sections 610.010 to 610.026, the public governmental body or the member shall be subject to a civil penalty in an amount up to one thousand dollars. . . .

Therefore, a defendant "knowingly" violates the Sunshine Law when the defendant simply has "knowledge, information, or insight." The relevant "knowledge, information, or insight" in this context pertains to whether a particular record was requested and whether the record was thereafter disclosed. The defendant "knowingly" violates the Sunshine Law when it knows a record was requested and it failed to disclose the record— i.e., the defendant knows of the facts of its conduct.[3] It is not necessary that the defendant knows of the law governing its conduct. To require specific knowledge of the law requires a departure from the plain language of the statute and, again, renders "knowingly" the functional equivalent of "purposely." Moreover, the overarching purpose of the Sunshine Law is to ensure open government and transparency. If ignorance of the law is no excuse for the average citizen, then surely a contrived

---

[3] This still excludes cases in which the defendant was unaware of the facts that constituted the Sunshine Law violation, e.g., cases in which the defendant did not know that a particular record was requested or, if requested, that it was not produced.

8

misconstruction of the Sunshine Law is no excuse for a government body charged with performing its mandates.

### III. The Case Should Be Remanded for Consideration Applying the Proper Definitions of "Knowingly" and "Purposely"

In ordering the City to disclose the internal affairs report, the circuit court found:

> The Defendant City of Arnold's contention that the Internal Affairs report is in whole, or in part, a personnel record is wholly inaccurate. The Court finds that the Internal Affairs report is an "Investigative report" as defined in §610.100.1(5) and that it is "Inactive" as defined in §610.100.1(3).
>
> The Internal Affairs investigation was ordered By Police Chief Shockey upon the formal complaint by the Plaintiff herein. The complaint alleged criminal violations by City employee Linda Darnell, while working as a Police Department dispatcher. Thereafter, the investigation became inactive when Linda Darnell resigned her position, and no further action was taken. Therefore, at this point in time Plaintiffs are entitled to disclosure of said report.

The circuit court further found the City's failure to disclose the internal affairs report was "substantially unjustified under all relevant circumstances."

As explained above, a defendant "purposely" violates the Sunshine Law when it acts with the plan or purpose of committing such a violation. On the other hand, a defendant "knowingly" violates the Sunshine Law when the defendant knows that a particular record is requested and knows that it has not disclosed it—regardless of whether the defendant knows (or even reasonably should have known) whether the failure to produce the record constitutes a violation of the Sunshine Law.

9

In my view, this case should be reversed and remanded based on misapplication of the law to the facts.[4] Using these correct definitions, there was a basis in the evidence to conclude the City acted purposely or knowingly. While I would defer to the circuit court's findings of fact, I would not affirm its conclusions of law that did not have the benefit of this Court's decision in *Strake* or the proper definition of "knowing."

The long and short of the City's argument is that it did not know that its failure to disclose the inactive investigation report was a violation of the Sunshine Law because one provision of the Sunshine Law (i.e., § 610.021(3)) seemed to permit closure while another provision of the Sunshine Law (i.e., § 610.100.2) required disclosure. Properly defined, this argument is irrelevant to the question of whether the City "knowingly" violated the Sunshine Law because it knew that the report had been requested and it knew that the report was not being disclosed.

Moreover, the City's "reasonable mistake of the law" defense does not preclude a finding that the City "purposely" violated the Sunshine Law because—long before the City's conduct in this case—this Court unambiguously held that the failure to disclose an investigative report pursuant to § 610.100.2 violates the Sunshine Law. *See Guyer v. City of Kirkwood*, 38 S.W.3d 412, 414 (Mo. banc 2001) (expressly rejecting the argument that

---

[4] The principal opinion reviews whether the circuit court's judgment was supported by substantial evidence or was against the weight of the evidence, even though the appellant did not brief or argue that point in the court of appeals prior to transfer or in this Court. The issue raised in the court of appeals and still in this Court is that the facts found by the circuit court do not support its legal conclusion.

10

§ 610.021(3) may be used to justify closure where § 610.100.2 requires disclosure).[5] Having had the benefit of *Guyer* for more than a decade, it simply was not reasonable for the City to believe that its conduct did not violate the Sunshine Law. Therefore, the circuit court could conclude that the City acted with a conscious plan or design to commit such a violation.

*Strake* teaches that, when a defendant makes a conscious decision to violate the Sunshine Law to avoid violating a lesser obligation, it is inescapable that the defendant "purposely" violates the Sunshine Law. *Strake*, 473 S.W.3d at 646 (defendant subordinated its Sunshine Law obligation to a lesser obligation, i.e., a contractual duty of confidentiality). Here, there was evidence from which the circuit court could find that the City was pursuing one (or both) of two such lesser obligations: (a) a local ordinance prohibiting disclosure or (b) the desire to protect itself from potential civil claims based on the actions of its employees. If the circuit court finds the City subordinated its obligation pursuant to § 610.100.2 (rendered clear and certain by *Guyer*) to one or both of these lesser obligations, then—following *Strake*—it should conclued the City "purposely" violated the Sunshine Law.

This case presents the rare case in which it appears the circuit court misapplied the law to the facts. For that reason, in my view, this case should be remanded to the circuit

---

[5] Section 610.100.2 requires disclosure of the investigative report because the underlying investigation was inactive. "[I]nvestigative reports of all law enforcement agencies are closed records until the investigation becomes inactive." Section 610.100.2. Even if the investigation were still active, disclosure would be required pursuant to subsection 4: "Any person, including a[n] . . . attorney for a person, . . . involved in any incident or whose property is involved in an incident, may obtain any records closed pursuant to this section . . . for purposes of investigation of any civil claim . . . ." Section 610.100.4.

11

court to apply its factual findings to the proper definition of "knowingly," defined herein, and "purposely," as defined in *Strake,* which had not been decided at the time of the circuit court's decision in this case.

_____

Zel M. Fischer, Judge


RACHAL LAUT, f/k/a/ RACHAL GOVRO, )
and JOHN M. SOELLNER, )
                          )
      Appellants, )
                          )
vs. )     **No. SC95307**
                          )
CITY OF ARNOLD, )
                          )
      Respondent. )

## DISSENTING OPINION

When the Sunshine Law was adopted in 1973, it had no "teeth." *Kansas City Star Co. v. Shields*, 771 S.W.2d 101, 104 (Mo. App. 1989). This led the legislature to adopt various remedies to ensure meaningful enforcement of the law. *Id.* One of the "teeth" added in 1982 was a provision allowing the trial court to order the defendant to pay the plaintiff's attorney's fees in cases in which the defendant's actions were sufficiently culpable, i.e., when the defendant "purposely" violated the Sunshine Law. § 610.027.3, RSMo Supp. 1983.

In *Spradlin v. City of Fulton*, 982 S.W.2d 255 (Mo. banc 1998), however, this Court defined "purposely" so narrowly that it rendered the 1982 version of section 610.027.3 ineffective both as a threat to motivate public governmental bodies to obey the Sunshine Law and as an inducement to the public to bring meritorious Sunshine Law

claims. In 2004, therefore, the General Assembly amended section 610.027 to make an award of attorney's fees **mandatory** when a defendant "purposely" violates the Sunshine Law (as defined in *Spradlin*), but merely **permissible** in a much broader category of cases, i.e., those in which the defendant "knowingly" violates the Sunshine Law.

Now, however, the majority opinion frustrates the intent of the 2004 amendments to expand the cases in which attorney's fees may be ordered by defining "knowingly" so that it is functionally – if not precisely – the same as the definition of "purposely" provided in *Spradlin*. Accordingly, I respectfully dissent.

## I.      Sunshine Law Remedies Prior to 2004

At the outset, it is worth noting that – at least for certain remedies – the General Assembly provides **strict liability** for Sunshine Law violations. This means that a plaintiff is entitled to declaratory and injunctive relief any time a Sunshine Law violation is shown, regardless of whether the defendant's conduct was accidental or knowing and regardless of whether the defendant knew (or even should have known) that its conduct would constitute a violation of the Sunshine Law. § 610.027.1, RSMo Noncum. Supp. 2014 ("Any aggrieved person … may seek judicial enforcement of the requirements of sections 610.010 to 610.026."); § 610.030 ("The circuit courts … shall have jurisdiction to issue injunctions to enforce the provisions of sections 610.010 to 610.115.").[1]

---

[1]   *Kansas City Star Co. v. Fulson*, 859 S.W.2d 934 (Mo. App. 1993) (aggrieved party sought declaratory judgment and an injunction); *Tribune Pub. Co. v. Curators of University of Missouri*, 661 S.W.2d 575 (Mo. App. 1983) (same).

But, realizing that the availability of declaratory and injunctive remedies may not be a sufficient deterrent to stop Sunshine Law violations or a sufficient incentive to motivate members of the public to bring meritorious Sunshine Law claims, the General Assembly in 1982 authorized a trial court to order a Sunshine Law defendant to pay the plaintiff's attorney's fees in some – but not all – cases. In deciding where to draw the line between Sunshine Law violations for which an award of attorney's fees may (and may not) be made, the General Assembly had to balance two competing realities. First, the costs of bringing a Sunshine Law claim (including, most notably, attorney's fees) are so high that they present a considerable barrier to enforcement of the Sunshine Law by members of the public, even when they have a meritorious claim. Second, even when a public governmental body acts with great diligence and utmost good faith, Sunshine Law violations still may occur when the body makes a mistake of fact (e.g., it does not know that a particular record has been requested or is not being produced) or a mistake of law (e.g., it fails to understand that the Sunshine Law requires disclosure in the circumstances at hand). The General Assembly struck that balance in 1982 by providing that a trial court may award attorney's fees only where the defendant "purposely" violates the Sunshine Law. § 610.027.3, RSMo Supp. 1983.

Because the General Assembly did not define "purposely" in section 610.027.3, this Court addressed the meaning of that term in *Spradlin* and held that a defendant "purposely violates" the Sunshine Law only when it has a "conscious design, intent, or plan to violate the law and [acts] … with awareness of the probable consequences." *Id.* at 262 (internal quotation marks omitted). The Court acknowledged that this definition

3

makes an award of attorney's fees possible only in the rarest of cases and, therefore, that

section 610.027.3 would make little practical difference either in deterring Sunshine Law

violations or incentivizing members of the public to pursue meritorious Sunshine Law

claims.

> ***This may be so and the legislature might well consider the issue.***
> However, "courts must give effect to the language as written." *Kearney*
> *Special Road Dist. v. County of Clay,* 863 S.W.2d 841, 842 (Mo. banc
> 1993). The plain language of the statute only authorizes assessment of
> attorney's fees against an individual upon a demonstration of a
> "purposeful" violation of the law. "There is no room for construction even
> when a court may prefer a policy different from that enunciated by the
> legislature." *Id.; see also Bethel v. Sunlight Janitor Service,* 551 S.W.2d
> 616, 620 (Mo. banc 1977) (issues of public policy must be addressed to the
> General Assembly).

*Spradlin*, 982 S.W.2d at 261 (emphasis added).

## II.	Sunshine Law Remedies After 2004

In 2004, the General Assembly took the Court at its word and amended section

610.027 to expand the category of cases in which attorney's fees may be awarded. The

2004 amendments keep the original category of cases in which the defendant "purposely"

violates the Sunshine Law but make an award of attorney's fees in such cases mandatory.

§ 610.027.4, RSMo Noncum. Supp. 2014. In addition, the 2004 amendments allow (but

do not require) the trial court to award attorney's fees where the defendant "knowingly"

violates the Sunshine Law.   § 610.027.3, RSMo Noncum. Supp. 2014.

Every purposeful violation also is a knowing violation, but the opposite is not true.

The two terms are not synonymous. If they were, the General Assembly's decision to

add this new category of cases would be meaningless. *See Cox v. Dir. of Revenue*, 98

4

S.W.3d 548, 550 (Mo. banc 2003) (when the General Assembly amends a statute, this Court must presume it intended to effect a change to the prior law). *See also State v. Liberty*, 370 S.W.3d 537, 552 (Mo. banc 2012) (quoting *Kilbane v. Dir. of Dept. of Revenue*, 544 S.W.2d 9, 11 (Mo. banc 1976)) ("The legislature is not presumed to have intended a useless act."). Instead, it is clear that the General Assembly intended the 2004 amendments to expand the category of cases in which attorney's fees may be awarded, while leaving to the discretion of the trial court the decision of whether to award such fees in all but the most culpable cases (i.e., when the defendant "purposely violates" the Sunshine Law). This intention is frustrated when "knowingly" is given a definition that is the functional equivalent of "purposely."

The majority opinion takes its definition of "knowingly" from *Strake v. Robinwood West Community Improvement District*, 473 S.W.3d 642, 645 (Mo. banc 2015) ("A knowing violation requires proof that the public governmental body had 'actual knowledge that [its] conduct violated a statutory provision.'") (alteration in original). But this definition was dicta in *Strake* because the holding of the Court was that the defendant "purposely violated" the Sunshine Law for purposes of a mandatory attorney's fee award under section 610.027.4. If a violation is committed purposely, it necessarily is committed "knowingly."

*Strake* took its definition from *White v. City of Ladue*, 422 S.W.3d 439, 452 (Mo. App. 2013). *White* states: "A federal district court interpreting Missouri law has held that to establish a 'knowing' violation of the Sunshine Law, a plaintiff must show that the defendant had 'actual knowledge that the conduct violated a statutory provision.'" *White*,

5

422 S.W.3d at 452 (quoting *Wright v. City of Salisbury, Mo.*, No. 2:07CV00056, 2010

WL 2947709, at \*5 (E.D. Mo. July 22, 2010)).  The unpublished federal district court

decision from which *White* took its definition of "knowingly," in turn, states:

> The parties have not cited to the Court any cases that define "knowingly" in the context of the Sunshine Law.  This Court believes that the Missouri Supreme Court would hold that the drafters did not intend to impose the specter of civil penalties and attorney's fees on a strict liability basis.  In the recent case of *R.L. Polk*, 309 S.W.3d at 881, the Missouri Court of Appeals found that the state Department of Revenue had violated the Sunshine Law by charging an across-the board "per record" fee for public records provided electronically over the internet.  The Appellate Court, however, specifically recognizing the various mental states and corresponding penalty provisions in the Sunshine Law, held that this violation was not a "purposeful or knowing violation." *Id.* at 887.  **The Appellate Court based this holding on the definition for "purposely" in** *Spradlin,* **982 S.W.2d at 262.** *Id.* **Indeed, the trial court in R.L. Polk had held that "the knowing or purposeful violation described in subsections 3 and 4 of Section 610.027 requires a purpose to violate a statutory provision or actual knowledge that the conduct violated a statutory provision."** *See* Br. of Appellants-Cross-resp'ts Dep't of Revenue & Dir. of Revenue, Case No. WD70973, 2010 WL 718551, at \*11 (Mo. Ct. App.) (emphasis added).

*Id.* at \*5 (emphasis added, footnote omitted).

So, the majority opinion defines "knowingly" using language originally taken

from an unpublished federal district court decision that notes – explicitly – that it was

applying the definition of "purposely" set forth in *Spradlin*.  In so doing, the intended

effect of the 2004 amendments are frustrated by rendering the sought-after expansion of

cases in which attorney's fees may be awarded wholly illusory.  Not only is such a

construction to be avoided, *see Liberty*, 370 S.W.3d at 552; *Cox*, 98 S.W.3d at 550;

*Kilbane*, 544 S.W.2d at 11, it is incorrect.

6

In the 2004 amendments to section 610.027, the General Assembly kept the classification of cases in which the defendant "purposely violates" the Sunshine Law without changing the definition that *Spradlin* had given the term "purposely." As a result, today, the definition of "purposely" in the mandatory attorney's fee award provision in section 610.027.4 applies only when the public governmental body exhibits a "conscious design, intent, or plan" to violate the Sunshine Law and does so "with awareness of the probable consequences." *Spradlin*, 982 S.W.2d at 262.

To give the 2004 amendments their intended effect of expanding the category of cases in which attorney's fees may be awarded, this Court should define "knowingly" as used in section 610.027.3 broader than – not the same as – the definition of "purposely" as given in *Spradlin*. Such a definition is ready to hand:

> A person "acts knowingly," or with knowledge,
>
> > (1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or
> >
> > (2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

§ 562.016.3, RSMo 2000. This definition of "knowingly" is to be distinguished from the definition of "purposely" in the same section:

> A person "acts purposely," or with purpose, with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result.

§ 562.016.2, RSMo 2000.[2]

---

[2] Because section 562.016 has remained unchanged since it was passed in 1977, these definitions were available to the General Assembly when it first passed section 610.027 in 1982 and when it amended that section in 2004.

7

It is understandable why the General Assembly would look to definitions from the criminal law to draw a distinction in section 610.027. In *Spradlin*, this Court suggested that the provision of section 610.027 allowing (but not requiring) the trial court to award attorney's fees was a "penal" provision. But there is nothing unique about the definitions of "purposely" and "knowingly" under Missouri criminal law. The meaning of these terms is the same in any context.

> **knowingly** *adv.* In such a manner that the actor engaged in prohibited conduct with the knowledge that the social harm that the law was designed to prevent was practically certain to result; deliberately …. A person who acts *purposely* wants to cause the social harm, while a person who acts *knowingly* understands that the social harm will almost certainly be a consequence of the action, but acts with other motives and does not care whether the social harm occurs. See culpability; mens rea. Cf. purposely.

Black's Law Dictionary 1003 (10th ed. 2014).

Still, caution must be used lest an incorrect application of the definition of "knowingly" in section 562.016.3 lead to the same mistake made by *Strake*, i.e., that a defendant cannot "knowingly" violate the Sunshine Law unless there is "proof that the public governmental body had '***actual knowledge that [its] conduct violated a statutory provision***.'" *Strake,* 473 S.W.3d at 645 (emphasis added). The reason this is an improper application of the definition of "knowingly" in section 562.016.3 is because knowledge of whether one's conduct is – or is not – a violation of the law is never an "attendant circumstance" of such conduct, or a "result" of such conduct, or a part of the "nature" of that conduct, as those terms are used in section 562.016.3. To avoid such an incorrect application of the definition of "knowingly," section 562.021.5 provides:

> **Knowledge that conduct constitutes an offense**, or knowledge of the existence, meaning or application of the statute defining an offense **is not an element of an offense unless the statute clearly so provides**.

§ 562.021.5, RSMo 2000 (emphasis added). *See also, e.g., Bryan v. United States,* 524 U.S. 184, 192–93 (1998) (because the maxim that ignorance of the law is no excuse for a violation of that law, "unless the text of a statute *dictates* a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense" and does not refer to a "culpable state of mind or to knowledge of the law"); *United States v. Int'l Minerals & Chem. Corp.,* 402 U.S. 558, 559, 563 (1971) (the phrase "knowingly violates [applicable regulations]" requires knowledge of the facts that constitute the violation, not knowledge of the regulations themselves, because in the absence of a clear legislative mandate to the contrary, "ignorance of the law is no excuse"); *United States v. George*, 386 F.3d 383, 390 (2d Cir. 2004) (the criminal statutory *mens rea* term "knowingly" has attained a largely settled interpretation … [which] signals that the statute only requires a finding of general intent [not knowledge of the law] for conviction").

The definition of "knowingly" from section 562.016.3 requires that the actor know and appreciate the *facts* about the actor's conduct, but it does not require that the actor know and appreciate the *law* governing such conduct. As a result, the intent of the decision to use the term "knowingly" in the 2004 amendment to section 610.027.3 was to create a category of cases in which an award of attorney's fees may be made that is bigger than just violations of the Sunshine Law committed "purposely," but not so large as to include every conceivable violation. The new category of cases in which the

9

Sunshine Law violation is committed "knowingly" *still excludes* cases in which the defendant was unaware of the facts that constituted the Sunshine Law violation (i.e., cases in which the defendant did not know that a particular record was requested or, if requested, that it was not produced), but *now includes* all cases in which the defendant knew a record had been requested and knew it was not produced, regardless of whether the defendant actually knew (or had reason to know) that its conduct was a violation of the Sunshine Law. By making an attorney's fee award in such cases permissive rather than mandatory, it is clear that the General Assembly allowed the trial court to exercise discretion in determining which "knowing" violations merited such an award and which did not.

### III. The Case Should Be Remanded for Application of the Proper Definitions of "Knowingly" and "Purposely"

As explained above, a defendant "purposely" violates the Sunshine Law when the defendant acts with the plan or purpose of committing such a violation. On the other hand, a defendant "knowingly" violates the Sunshine Law when the defendant knows that a particular record is requested and knows that it has not disclosed it – regardless of whether the defendant knows (or even reasonably should have known) whether the failure to produce the record constitutes a violation of the Sunshine Law.

Using these definitions, there was a basis in the evidence to conclude that the defendant in this case (the "City") acted purposely, but there can be no doubt that the City acted knowingly. Accordingly, this case should be remanded so that the trial court can apply the proper definitions of "purposely" and "knowingly." If the trial court does

not find that a preponderance of the evidence supports the inference that the City "purposely" violated the Sunshine Law under section 610.027.4, it should exercise its discretion and determine whether the fact that the City "knowingly" violated the Sunshine Law is of such gravity and culpability in this case to merit an award of attorney's fees under section 610.027.3.

The long and short of the City's argument is that it did not know that its failure to disclose the inactive investigation report was a violation of the Sunshine Law because one provision of the Sunshine Law (i.e., section 610.021(3)) seemed to permit closure while another provision of the Sunshine Law (i.e., section 610.100.2) required disclosure. Properly defined, this argument is irrelevant to the question of whether the City "knowingly" violated the Sunshine Law because it knew that the report had been requested and it knew that the report was not being disclosed.

Moreover, the City's "reasonable mistake of the law" defense does not preclude a finding that the City "purposely" violated the Sunshine Law because – long before the City's conduct in this case – this Court unambiguously held that the failure to disclose an investigative report under section 610.100.2 violates the Sunshine Law. *See Guyer v. City of Kirkwood*, 38 S.W.3d 412, 414 (Mo. banc 2001) (expressly rejecting the argument that section 610.021(3) may be used to justify closure where section 610.100.2 requires disclosure).[3] Having had the benefit of *Guyer* for more than a decade after it was

---

[3] Section 610.100.2 requires disclosure of the investigative report because the underlying investigation was inactive. "[I]nvestigative reports of all law enforcement agencies are closed records until the investigation becomes inactive." § 610.100.2. Even if the investigation were still active, disclosure would be required under subsection 4:

11

decided, it simply was not reasonable for the City to believe that its conduct did not violate the Sunshine Law; therefore, the trial court could conclude that the City acted with a conscious plan or design to commit such a violation.

*Strake* teaches that, when a defendant makes a conscious decision to violate the Sunshine Law to avoid violating a lesser obligation, it is inescapable that the defendant "purposely" violates the Sunshine Law. *Strake*, 473 S.W.3d at 646 (defendant subordinated its obligation under the Sunshine Law to a lesser obligation, i.e., a contractual duty of confidentiality). Here, there was evidence from which the trial court could find that the City was pursuing one (or both) of two such lesser obligations: (a) a local ordinance prohibiting disclosure or (b) the desire to protect itself from potential civil claims based on the actions of its employees. If the trial court finds that the City subordinated its obligation under section 610.100.2 (rendered clear and certain by *Guyer*) to one or both of these lesser obligations, then – under *Strake* – it must find that the City "purposely" violated the Sunshine Law.

Accordingly, this case should be remanded so that the trial court can apply the proper definition of "knowingly" and the holding in *Strake* (which had not been decided at the time of the trial court's decision in this case) concerning "purposely." If the trial court does not find that a preponderance of the evidence supports the inference that the City "purposely" violated the Sunshine Law under section 610.027.4 and *Strake*, the trial

---

"Any person, including a[n] … attorney for a person, … involved in any incident or whose property is involved in an incident, may obtain any records closed pursuant to this section … for purposes of investigation of any civil claim …." § 610.100.4.

court then must exercise its discretion and determine whether the fact that the City

"knowingly" violated the Sunshine Law is of such gravity and culpability in this case to

merit an award of attorney's fees under section 610.027.3.


_____
Paul C. Wilson, Judge